826 So.2d 956 (2002)
Glen James OCHA, Appellant,
v.
STATE of Florida, Appellee.
No. SC00-2507.
Supreme Court of Florida.
June 27, 2002.
Rehearing Denied September 13, 2002.
*958 James B. Gibson, Public Defender, and George D.E. Burden, Assistant Public Defender, Daytona Beach, FL, for Appellant.
*959 Robert A. Butterworth, Attorney General, and Stephen D. Ake, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
We have on appeal a judgment of conviction of first-degree murder and a sentence of death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

Facts
On October 5, 1999, the appellant, Glen James Ocha, who also calls himself "Raven Raven," met the victim, Carol Skjerva, at Rosie's Pub in Kissimmee, Florida. They left the bar together and the victim drove the appellant to his home, where the two had consensual sexual intercourse. Afterwards, the victim made disparaging comments about Ocha and threatened to tell her boyfriend about the incident. Ocha became angry and forcefully told the victim to sit in a chair, as he paced back and forth deciding how he would address the situation. Ocha then entered the garage where he found a length of rope which he proceeded to use in strangling the victim. As he applied pressure, he lifted her off of the floor several times to ensure that she was dead. Finally, because he ascertained that the victim's heart was still beating, Ocha again tightened the rope around Skjerva's neck, hung the cord over an interior door to the garage, and closed the door on the rope, catching it between the door and its frame. Ocha then left the victim hanging from this door location.
Ocha then consumed a beer, cleaned the area, removing bottles and ash from the kitchen table, and changed his clothing. After several minutes he returned to lower the victim's body from the door and force it into the cabinet portion of an entertainment center located in the garage. Thereafter, Ocha left the premises and drove the victim's car to Daytona Beach, where he was arrested on October 6, 1999 for disorderly intoxication. While in jail, Ocha confessed to detectives of the Daytona Beach Police Department that he had murdered Skjerva. The detectives promptly notified the Osceola County Sheriff's Office of the appellant's statements. Thereafter, Ocha was transferred to incarceration in Osceola County, where he gave a detailed description of the murder to detectives.
On November 1, 1999, Ocha was indicted for first-degree murder. Based upon the testimony of three mental health professionals, the trial judge concluded that Ocha was competent to enter a guilty plea. Ocha acknowledged to the trial court that he had, in fact, signed the plea form, waiver of jury trial, waiver of presentation of mitigation of evidence, and the acknowledgment that the State was seeking the death penalty, voluntarily and without coercion after reading and understanding the documents. Ocha further stated that he was not currently suffering from, nor had he been treated in the past for, mental or emotional disorders and was not under the influence of drugs or alcohol. The State then related the facts of Ocha's crime, and the trial court ordered a presentence investigation (PSI) to be conducted prior to the sentencing hearing.
On July 6, 2000, the trial court reconvened for a hearing on sentencing. The State presented evidence of three aggravating factors: Ocha's prior commission of a violent felony, that the instant murder was especially heinous, atrocious, or cruel (HAC), and that it was cold, calculated and premeditated (CCP). As to the first aggravator, the trial court admitted certified copies of Ocha's conviction in Kentucky for attempted premeditated murder and robbery in the first degree, and his incarceration in various Kentucky prisons. With regard to the second and third possible aggravators, the court received testimony from Dr. Sashi B. Gore, the chief medical examiner, who examined the victim's body at the scene and later conducted an autopsy, *960 and Ed Boykin, a Deputy Sheriff of Osceola County.
Dr. Gore testified that the victim's death resulted from ligature strangulation. Moreover, he stated hypothetically, that strangulation of a conscious person to the point that one becomes unconscious requires "from thirty, sixty seconds to up to three to four minutes." The doctor testified that, initially, a victim may be so frightened as to experience cardiac arrhythmia when she sees the perpetrator approaching with the intent and capacity to strangle. The victim then experiences pain during the actual strangulation. He further stated that he could not conclusively testify as to any defensive wounds on the victim due to decomposition of the body prior to the autopsy. He could, however, specifically identify the ligature that was used in the strangulation of the victim because its texture matched the patterns left on the victim's neck. Consistent with Ocha's wishes and instructions, defense counsel did not cross-examine Dr. Gore.
Ed Boykin testified that he arrived at Ocha's home on October 7, 1999, after a "well-being check" by the Osceola Sheriff's Officewhich was prompted by the report from the Volusia County Sheriffs Department revealed the victim's body in the garage. Detective Boykin identified several photographs of the crime scene and an audio tape and transcript of Ocha's October 11, 1999, statement to the Osceola Sheriffs Office. Additionally, Detective Boykin recounted Ocha's version of the events in relation to the photographs. Again, defense counsel reiterated that Ocha did not want him to cross-examine the witnesses.
Despite Ocha's waiver of the right to present mitigation, defense counsel proffered the competency hearing testimony of Drs. Tressler, Berns, and Berland, which, absent Ocha's clear instructions to the contrary, he would have otherwise fully presented for the trial court's consideration. Additionally, Dr. Berland's testimony would address the existence of fifteen possible mitigating factors. Defense counsel proffered several letters written by Ocha to the victim's fiancé, to the prosecuting assistant state attorney, and to defense counsel, which showed remorse; he also submitted for consideration Ocha's cooperation with the investigating police departments.
Ultimately, the trial court found the prior violent felony and HAC aggravators had been proven beyond a reasonable doubt. However, the court did not find the CCP aggravator present because Ocha did not act with a heightened and premeditated plan or design to kill. The court gave little weight to the mitigator that Ocha was a good prisoner in Kentucky; some weight to his history of suicidal thinking; some weight to Ocha's artistic ability; little weight to his report of two severe head injuries; some weight to his extensive history of alcohol and drug abuse; little weight to Ocha's learning disability; little weight to Ocha's ability to form a warm and caring relationship; little weight to his urging his ex-wife to seek a more professional career; no weight to Ocha's military service; little weight to his post-traumatic stress disorder; little weight to his chaotic and violent childhood; little weight to Ocha's remorse for the murder; some weight to the fact that he was intoxicated with alcohol and Ecstasy (MDMA) on the night of the offense; little weight to his psychiatric disturbance; and little weight to his having been a hard worker in the Kentucky prison system. The trial court determined that the aggravators "far outweigh[ed]" the mitigators and sentenced Ocha to death. On appeal, Ocha asserts three claims.[1]

*961 Analysis

When testifying with regard to Ocha's competency, two of the psychological experts stated that they would prefer to perform further testing of the appellant. Dr. Berland would have tested the appellant further to fully evaluate certain of his psychotic symptoms. Likewise, Dr. Berns recommended that Ocha undergo a full neuropsychiatric evaluation to rule out the possibility of a brain tumor. In his first assertion of error, the appellant contends that the trial court abused its discretion by not ordering the tests mentioned by the experts before sentencing the appellant to death.
It is well established that a competent defendant may waive his right to present mitigating evidence in the penalty phase of his first-degree murder trial. See Durocher v. State, 604 So.2d 810, 812 (Fla. 1992); Pettit v. State, 591 So.2d 618, 620 (Fla.1992); Hamblen v. State, 527 So.2d 800, 804 (Fla.1988). In Hamblen, this Court held that where a competent pro se defendant pled guilty, waived his right to a jury's sentencing recommendation, and did not wish to present mitigating evidence, a trial court was not required to appoint counsel to present mitigating evidence on the defendant's behalf. Hamblen, 527 So.2d at 804. Under such circumstances, it was sufficient that the trial court engaged in a "thoughtful analysis of the facts," which adequately protected society's interests in ensuring that the death penalty was not being abused. Id.; see also Pettit, 591 So.2d at 620 (holding that one convicted of first-degree murder could waive his right to present mitigating evidence, but stressing that "the trial judge must carefully analyze the possible statutory and nonstatutory mitigating factors against the aggravators to assure that death is appropriate").
Although a trial court may have discretion to comply with a competent defendant's decision to waive presentation of mitigating evidence, it is obligated to ensure that the defendant's waiver is knowing, uncoerced, and not due to defense counsel's failure to fully investigate penalty phase matters. See Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993). The defendant in Koon instructed his attorney to present no mitigating evidence for consideration in the penalty phase after his conviction for first-degree murder. See id. at 249. On appeal, however, Koon argued that his attorney's willingness to forego presentation of mitigating evidence amounted to ineffective assistance of counsel. See id. While upholding Koon's death sentence, this Court created a prospective rule for trial courts to follow when a defendant waives his right to present mitigators, as occurred here:
When a defendant, against his counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase, counsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence.
Id. at 250. Application of this rule creates a trial record that adequately reflects the *962 defendant's knowing waiver of his right to present evidence in mitigation. See id.
Ocha now relies on Muhammad v. State, 782 So.2d 343 (Fla.2001), for the proposition that it was within the trial court's discretion to order further evaluation and testing by the doctors. In Muhammad, we vacated the defendant's death sentence and remanded for resentencing, in part because Muhammad waived the right to present mitigating evidence and the trial court provided no alternative means for mitigating evidence to be presented to the jury. See id. at 349, 361-62. In anticipation of Muhammad's continued refusal to offer mitigating factors at resentencing, this Court prospectively required a presentence investigation report (PSI) for all cases in which the defendant does not challenge his death sentence and refuses to present evidence in support of mitigating factors. See id. at 363.
To be meaningful, the PSI should be comprehensive and should include information such as previous mental health problems (including hospitalizations), school records, and relevant family background. In addition, the trial court could require the State to place in the record all evidence in its possession of a mitigating nature such as school records, military records, and medical records. Further, if the PSI and the accompanying records alert the trial court to the probability of significant mitigation, the trial court has the discretion to call persons with mitigating evidence as its own witnesses.
Id. at 363-64 (footnote omitted).
Although there was no jury recommendation below, the trial court here recognized its duty to independently examine the record for any evidence of mitigation, whether presented by the defendant or not. See Farr v. State, 621 So.2d 1368, 1369 (Fla.1993); Santos v. State, 591 So.2d 160, 164 (Fla.1991). According to Ocha, however, the trial court abused its discretion by not heeding the doctors' recommendations for further testing.
Initially, it is clear that Muhammad is not applicable to the instant case because it was decided on January 18, 2001two months after Ocha's sentencing on November 1, 2000. Our Muhammad opinion specified that the PSI requirement was prospective only: "An adoption of a prospective procedure in this case would not call into question those cases that are already final on appeal or those cases that already have been tried but not yet decided on appeal at the time this opinion is rendered." Muhammad, 782 So.2d at 365. Nevertheless, the trial court here did order a PSI, and evaluated testimony presented by Drs. Tressler and Berns, as well as the potential mitigators prepared by Dr. Berland, including Ocha's history of suicidal thinking, two severe head injuries as a child, extensive history of drug and alcohol abuse, a learning disability, possible post-traumatic stress disorder, a chaotic and violent childhood, and a psychiatric disturbance or mental illness. After such consideration, the trial court concluded that the aggravating factors outweighed and were more compelling than the mitigators.
Even under Muhammad's PSI requirement, nothing compels the trial court to order psychological testing. First, there is no guarantee that Ocha will even submit to further testing, as he has refused to cooperate in the past. Second, the mitigating evidence already contained in the record provides an ample basis upon which the trial judge could determine the extent to which Ocha's mental condition impacted his life. In its sentencing order, the trial court stated:
[M]ental illness does not always equate with insanity under the law. Ocha has demonstrated that, while he may have mental problems, he does know that his *963 killing of Skjerva was wrong and he has shown remorse for his actions. At the competency and plea hearing ... the Court found Ocha competent to stand trial or to enter a plea.
In sum, the trial court did not abuse its discretion by failing to order further testing to determine Ocha's mental condition. "Discretion is abused only `when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court.'" Trease v. State, 768 So.2d 1050, 1053 n. 2 (Fla.2000) (quoting Huff v. State, 569 So.2d 1247, 1249 (Fla.1990)). There is ample evidence contained in the record directed to mental mitigating factors and a proper consideration thereof to support the trial court's balancing and weighing to render the sentencing order. Therefore, we deny the appellant's requested relief.
In his second claim, the appellant asserts that the trial court improperly applied the HAC aggravating circumstance. When evaluating claims alleging error in the application of aggravators, this Court does not reweigh evidence to determine whether the State proved each aggravating factor beyond a reasonable doubt. See Alston v. State, 723 So.2d 148, 160 (Fla.1998). Rather, our function is "to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding." Id. (quoting Willacy v. State, 696 So.2d 693, 695 (Fla.1997)). It is clear that the trial court correctly applied this Court's oft-repeated rule that "it is permissible to infer that strangulation, when perpetrated upon a conscious victim, involves foreknowledge of death, extreme anxiety and fear, and that this method of killing is one to which the factor of heinousness is applicable." Tompkins v. State, 502 So.2d 415, 421 (Fla.1986); see also, e.g., Blackwood v. State, 777 So.2d 399, 409 (Fla.2000). Moreover, in Orme v. State, 677 So.2d 258 (Fla.1996), we explicitly stated:
Our case law establishes ... that strangulation creates a prima facie case for this aggravating factor [HAC]; and the defendant's mental state then figures into the equation solely as a mitigating factor that may or may not outweigh the total case for aggravation.
Id. at 263.
Ocha attempts to rebut the presumption of heinousness by showing his lack of intent to prolong Skjerva's suffering. For this he relies on this Court's statement in Bonifay v. State, 626 So.2d 1310 (Fla. 1993):
The fact that the victim begged for his life or that there were multiple gunshots is an inadequate basis to find this aggravating factor [HAC] absent evidence that Bonifay intended to cause the victim unnecessary and prolonged suffering.
Id. at 1313. Although Bonifay shot the victim and the victim begged for his life before being executed by a shot to the head, the record indicated Bonifay's intent that the death be quick. See id.
It is clear that the defendant's intent does not weigh as heavily in the determination of the applicability of the HAC aggravator as does the victim's actual suffering. See Sochor v. State, 580 So.2d 595, 603 (Fla.1991) (finding HAC proper where "[t]he evidence supports the conclusion of horror and contemplation of serious injury or death by the victim," but not CCP because "[t]he evidence ... failed to demonstrate [the] requisite heightened level of premeditation [on the part of the defendant]"). Indeed, in Guzman v. State, 721 So.2d 1155 (Fla.1998), the Court held:
The intention of the killer to inflict pain on the victim is not a necessary element *964 of the [HAC] aggravator. As previously noted, the HAC aggravator may be applied to torturous murders where the killer was utterly indifferent to the suffering of another.
Id. at 1160; see also Bowles v. State, 804 So.2d 1173, 1177 (Fla.2001) (stating that "there is no necessary intent element to HAC aggravating circumstance"); Hitchcock v. State, 755 So.2d 638, 644 (Fla.2000) (same). Additionally, Bonifay is distinguishable because the defendant was seventeen years old and the murder was committed by gunshot to the head. See 626 So.2d at 1311.
In contrast, Ocha engaged in an extreme struggle with his victim here, and was eventually able to produce death by strangulation. By Ocha's own account, Skjerva was extremely frightened when she realized he was approaching her with the rope. During the struggle and strangulation, she urinated on herself and thereafter became limp. Ocha loosened the rope and the victim attempted to breathe again, but Ocha tightened the rope, hung it over a door, and closed the door on the rope so that the victim's body remained suspended. Clearly, the record rebuts Ocha's assertion that there is no evidence that Skjerva suffered, and supports the inference that Skjerva was conscious at the time strangulation began, knew Ocha was attempting to kill her, and was struggling to escape death. Therefore, this claim has no merit.
In his third and final claim, Ocha contends that this Court's holding in Klokoc v. State, 589 So.2d 219 (Fla.1991), is in conflict with our decision in Hamblen v. State, 527 So.2d 800 (Fla.1988). Therefore, according to the appellant, this Court should recede from Hamblen. This Court has long adhered to the idea that "[i]n the field of criminal law, there is no doubt that `death is different,' but, in the final analysis, all competent defendants have a right to control their own destinies.... A defendant cannot be executed unless his guilt and the propriety of his sentence have been established according to law." Hamblen, 527 So.2d at 804; see also, e.g., Lockhart v. State, 655 So.2d 69, 72 (Fla.1995); Clark v. State, 613 So.2d 412, 413-14 (Fla. 1992); Henry v. State, 613 So.2d 429, 433 (Fla.1992); Pettit, 591 So.2d at 620. With regard to this issue, this Court's decision in Klokoc is entirely consistent with its holding in Hamblen.
Klokoc was convicted and sentenced to death for the murder of his daughter. See 589 So.2d at 219. At Klokoc's request, the public defender moved to dismiss his mandatory direct appeal. See id. at 221. This Court denied the motion stating: "[C]ounsel for the appellant is hereby advised that in order for the appellant to receive a meaningful appeal, the Court must have the benefit of an adversary proceeding with diligent appellate advocacy addressed to both the judgment and the sentence." Id. at 221-22. Thus, Klokoc reiterates this Court's interest in ensuring that every death sentence is tested and has a proper basis in Florida law.
This proposition is not, as Ocha maintains, inconsistent with our Hamblen opinion. Hamblen and its progeny operate under the premise that a competent defendant may direct his own defense at trial. See Farr v. State, 656 So.2d 448, 449 (Fla. 1995). However, on appeal, this Court must examine Ocha's death sentence to ensure the uniform application of law, evidentiary support, and proportionality. See Alston, 723 So.2d at 160. To facilitate the Court's duty, Klokoc requires that the defendant have appellate counsel. Therefore, it is not inconsistent for Ocha to waive his right to present mitigating evidence at the trial level, yet have appellate counsel appointed against his wishes. Because Ocha presents no cognizable reason *965 for this Court to recede from our holding in Hamblen, we deny his requested relief.
While not presented by the appellant, this Court must also review the sufficiency of the evidence underlying his conviction, as well as the aggravating and mitigating circumstances of this case for constitutional proportionality. When a defendant pleads guilty to first-degree murder and is subsequently sentenced to death, the focus of our customary review of the conviction shifts. In this situation, we must examine "the propriety of [the] plea, since it is the plea which formed the basis for [the] conviction." Koenig v. State, 597 So.2d 256, 257 n. 2 (Fla.1992). Proper review requires this Court to scrutinize the plea to ensure that the defendant was made aware of the consequences of his plea, was apprised of the constitutional rights he was waiving, and pled guilty voluntarily. See LeDuc v. State, 365 So.2d 149, 150 (Fla.1978); see also Robinson v. State, 373 So.2d 898, 902 (Fla.1979).
In the instant case, the record contains substantial evidence revealing that the trial court, with the assistance of the appellant's trial counsel, explored the voluntariness of Ocha's plea and his informed basis to an exhaustive degree. Ocha pled guilty and waived his rights to a jury and the presentation of mitigation evidence in writing, and submitted the documents to the trial court. In addition to these documents, the record reveals that the trial court engaged in an extended colloquy with Ocha. The following portion exemplifies the exchange:
The Court: Mr. Ocha, did you sign the plea form and the waiver of jury trial, the waiver of presentation of mitigation evidence, and the acknowledgment that the State is seeking the death penalty?
The Defendant: Yes, Sir.
The Court: Did you read them over before you signed them?
The Defendant: Yes, I did, Sir.
The Court: Did you understand everything that you read in there?
The Defendant: Yes, Sir.
The Court: Did you go over them with your lawyer before you signed them?
The Defendant: Yes, I did.
The Court: Did you understand everything that your lawyer told you?
The Defendant: Yes, Sir.
The Court: Did anybody use any force or threats or pressure or intimidation or blackmail to make you sign them?
The Defendant: No, Sir.
The Court: Did you sign them freely and voluntarily?
The Defendant: I did, Sir.
. . .
The Court: And do you understand that the plea agreement reads no agreement, [the] State will be seeking the death penalty, on the plea form?
The Defendant: Yes, Sir.
Clearly, the appellant understood the gravity and effect of his actions and waivers, and his voluntary plea of guilty was properly accepted by the trial court.
It is well settled that because "death is a unique punishment," this Court must conduct a proportionality review in every death case. Beasley v. State, 774 So.2d 649, 673 (Fla.2000). This review is a "unique and highly serious function of this Court, the purpose of which is to foster uniformity in death-penalty law." Tillman v. State, 591 So.2d 167, 169 (Fla.1992). "It is not a comparison between the number of aggravating and mitigating circumstances; rather, it is a thoughtful, deliberate proportionality review to consider the totality of the circumstances in a case, and to compare it with other capital cases." Beasley, 774 So.2d at 673 (quoting Porter v. State, 564 So.2d 1060, 1064 (Fla.1990)) (internal quotation marks omitted). Additionally, proportionality review requires a *966 "discrete analysis of the facts, entailing a qualitative review by this Court of the underlying basis for each aggravator and mitigator rather than a quantitative analysis." Urbin v. State, 714 So.2d 411, 416 (Fla.1998) (quoting Terry v. State, 668 So.2d 954 (Fla.1996)). Finally, any doubts are to be resolved in favor of the defendant. See Tillman, 591 So.2d at 169.
While it is clear that the instant case may not be the most vicious or outrageous of murders reported in Florida, it is certainly one of the most aggravated and least mitigated of first-degree murders. Particularly weighty here is the existence and nature of the appellant's prior violent felony. In 1984, Ocha was convicted of both first-degree robbery and attempted murder. The appellant's Kentucky criminal record reveals that Ocha used a handgun to shoot a man, and robbed him after he was incapacitated. The combination of this weighty aggravating circumstance with the gruesome strangulation underlying the HAC aggravator in the instant case results in the unavoidable conclusion that these aggravators far outweigh the possible mitigators, and the death penalty is proportionate here. Clearly, this case presents a murder which is among the most aggravated and least mitigated reviewed by this Court. See, e.g., Blackwood v. State, 777 So.2d 399, 412-13 (Fla.2000) (concluding that the death sentence was proportionate where the HAC aggravator outweighed one statutory mitigator and multiple nonstatutory mitigators); Ferrell v. State, 680 So.2d 390, 391-92 (Fla.1996) (death sentence proper where the defendant had prior violent felony aggravator and several nonstatutory mitigators).

Conclusion
Based upon the foregoing, we conclude that the evidence contained in the record is sufficient to support the appellant's conviction for first-degree murder. Additionally, his death sentence is proportional. Because Ocha has identified no reversible error by the trial court below, we affirm the appellant's conviction and sentence of death.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, LEWIS, and QUINCE, JJ., concur.
PARIENTE, J., concurs as to conviction and concurs in result only as to sentence with an opinion, in which ANSTEAD, J., concurs.
PARIENTE, J., concurring as to conviction, concurring in result only as to sentence.
I concur in the affirmance of the conviction, and concur in result only as to the sentence. Based on the record before us, I conclude that the death sentence is proportional, and that there are no errors in the procedures that the trial court followed in this case under the current state of our death penalty jurisprudence.[2] The facts of this case, however, only reinforce my opinion that in order to ensure the reliability of our death penalty proportionality review, we should adopt a procedure by which we provide for the "appointment of special counsel to present available mitigation for the benefit of the jury, the trial court and this Court in order to assist the judiciary in performing our statutory and constitutional obligations." Muhammad v. State, 782 So.2d 343, 370 (Fla.2001) (Pariente, J., specially concurring); see also LaMarca v. State, 785 So.2d 1209, 1217-18 (Fla.2001) *967 (Pariente, J., concurring as to conviction, concurring in result only as to sentence) (stating that there should be "appointment of special counsel to present mitigating evidence in order to further increase the reliability, fairness and uniformity of the penalty phase and to better assist the trial court and this Court in fulfilling our constitutional and statutory obligations").
Ocha's attorney asserts that Ocha is a "death volunteer." Indeed, Ocha confessed voluntarily to the murder when arrested for an unrelated incident of disorderly conduct, has been remorseful for his actions, and wants to be executed. However, Ocha's attorney alleges that Ocha has a history of attempted suicide, two prior severe head injuries, and a history of alcohol and drug abuse. Apparently, when Ocha was arrested for his prior crime, he unsuccessfully tried to have police officers shoot him. Further, when arrested in Volusia County in 1999, Ocha was placed on suicide watch. Thus, there is a definite indication that Ocha is mentally ill. There is also an indication, based on the testimony from the mental health experts who examined Ocha for purposes of determining his competency, that Ocha may have a bipolar disorder. Further, Ocha reported that shortly before the murder, he used drugs (Ecstasy) and alcohol, and thus, there is some basis for establishing that he was under the influence of drugs and alcohol at the time of the murder. In addition, although Ocha stated to the trial court, when requesting that he waive presentation of mitigation, that he had not been treated in the past for mental or emotional disorders, in fact, there is evidence that he might have been treated for mental illness. Nevertheless, all of this evidence, which would weigh heavily as mitigation, is essentially undeveloped in this record, hindering our ability to make a determination as to whether imposition of the death penalty is proportional.[3]
As I stated in my special concurrence in Muhammad:
Moreover, it is not necessarily those most deserving of the death penalty (e.g., the most aggravated and least mitigated) who seek its imposition and refuse to present mitigation. Rather, in some cases, those seeking the death penalty, while competent, may suffer from serious underlying mental illnesses. The case of Klokoc [v. State, 589 So.2d 219, 222 (Fla.1991)] is a salient example of this fact. As we noted in Klokoc:

While this record reflects that this murder occurred when Klokoc was not in a heightened rage, it is unrefuted in this record that he was under extreme emotional distress. The record also establishes that he suffers from bipolar affective disorder, manic type with paranoid features, and that his family has a history of suicide, emotional *968 disturbance, and alcoholism. Further, he had no record of prior criminal activity.

Klokoc, 589 So.2d at 222 (emphasis supplied). In Klokoc, although the defendant refused to put on mitigation, the Court unanimously reduced the death sentence to life based on specially appointed counsel's presentation of mitigating evidence, including evidence of mental illness.

Klokoc is also an example of the importance of a uniform procedure for evaluating mitigating evidence before imposition of the death penalty in these rare cases and the benefits of appointing special counsel.... As a result of the procedure of appointing special counsel in Klokoc to present mitigating evidence during the penalty phase, we unanimously reversed Klokoc's death sentence on the grounds that the mitigating evidence in the record rendered the death sentence disproportionate. Essentially, this reversal was over the defendant's own objection.
Muhammad, 782 So.2d at 369 (Pariente, J., specially concurring).
Yet, based on the record in this case, I concur in affirming the death penalty, even considering the possibility of these various mitigating factors. In my view, what separates this case from both Klokoc, 589 So.2d at 222, and Robertson v. State, 699 So.2d 1343, 1347 (Fla.1997), is the aggravating factor of Ocha's prior conviction of another violent felony involving attempted murder and robbery for which he served his full sentence in Kentucky before being released in 1998, approximately one year before this murder.
ANSTEAD, J., concurs.
NOTES
[1] The appellant contends that the trial court abused its discretion by failing to order further testing to develop the trial record as to possible mental mitigators; that the trial court erred in finding that the instant murder was especially heinous, atrocious, or cruel; and that this Court should recede from its holding in Hamblen v. State, 527 So.2d 800 (Fla.1988), allowing a capital defendant to waive the presentation of mitigating evidence.
[2] For the reasons expressed in Francis v. State, 808 So.2d 110, 142-44 (Fla.2001) (Pariente, J., concurring in result only), I concur in result only as to the majority's discussion of the HAC aggravator and the element of intent. However, we have repeatedly upheld HAC in strangulation cases.
[3] Although a presentence investigation report ("PSI") was done in this case, the PSI contains virtually no information regarding Ocha's mental problems, no information from Ocha's prior imprisonment in Kentucky, and no information from Ocha's prior schooling. The information in the PSI appears to be largely based upon conversations with Ocha. Although I recognize that the procedure for requiring a PSI in Muhammad is prospective, I would note that

[t]o be meaningful, the PSI should be comprehensive and should include information such as previous mental health problems (including hospitalizations), school records, and relevant family background. In addition, the trial court could require the State to place in the record all evidence in its possession of a mitigating nature such as school records, military records, and medical records. Further, if the PSI and the accompanying records alert the trial court to the probability of significant mitigation, the trial court has the discretion to call persons with mitigating evidence as its own witnesses.
Muhammad, 782 So.2d at 363 (footnote omitted).