# Third District Court of Appeal

## State of Florida

Opinion filed March 16, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2885
Lower Tribunal No. 13-15299C
_____

**The State of Florida,**
Appellant,

vs.

**Yanker Orlando Perez-Diaz,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Dennis Murphy, Judge.

Pamela Jo Bondi, Attorney General, and Jacob Addicott, Assistant Attorney General, for appellant.

Clayton R. Kaeiser, for appellee.

Before WELLS, ROTHENBERG, and EMAS, JJ.

ROTHENBERG, J.

The State of Florida appeals the downward departure sentence imposed by the trial court in its effort to achieve sentencing parity between two co-defendants. Because the record reflects that these two defendants were not similarly situated and not equally culpable, we conclude that there is no legal basis to sustain the downward departure sentence. Accordingly, we reverse the sentence and remand for a resentencing of the defendant, Yanker Orlando Perez-Diaz.

The operative facts are as follows. Perez-Diaz, Mailin Robaina, and Mailin's brother, Jorge Robaina, were charged with various offenses stemming from events that occurred during a house party they had attended. Because the downward departure sentence was to achieve sentencing parity between the defendant and his co-defendant, Mailin, we confine our discussion to these two defendants.

Had the defendants proceeded to trial, the State was prepared to present the following evidence. While at a party, Perez-Diaz discovered that his wallet was missing. Believing that someone at the party had stolen it, Perez-Diaz armed himself with a machete, threatened to slice everyone up, ordered everyone into the house, yelled at everyone to get down onto the floor and on their knees, and demanded that they empty their pockets and place their valuables on a table. As the party-goers emptied their pockets and Mailin and Perez-Diaz collected the victims' wallets, watches, and cell phones, Mailin and Perez-Diaz yelled at the

2

victims, and Perez-Diaz threatened the victims with the machete. In addition to threatening the victims with the machete, Perez-Diaz punched a female captive in the face and struck another captive with the machete. The victims and witnesses testified that although Mailin helped collect the victims' property, Perez-Diaz was the one in control. Perez-Diaz and Mailin then fled the scene in a car driven by Mailin's brother, and thereafter, Perez-Diaz attempted to make fraudulent purchases with the stolen credit cards. Perez-Diaz was twenty-three years old when he committed these crimes. All of the victims were teenagers under the age of eighteen.

Perez-Diaz, Mailin, and Mailin's brother were all arrested and charged with committing various crimes. Perez-Diaz and Mailin were charged with four counts of armed robbery, one count of aggravated battery with a deadly weapon, one count of aggravated assault with a deadly weapon, and one count of grand theft. Perez-Diaz was also charged with one count of fraudulent use of a stolen credit card.

On May 20, 2014, Mailin entered into a negotiated plea with the State wherein she agreed to plead guilty to the charges, provide a truthful statement regarding the events on the night of the robberies and related crimes, and "cooperate" with the State. In exchange for Mailin's guilty plea and cooperation,

3

she was sentenced to two years of community control followed by ten years of probation.

Thereafter, Perez-Diaz also pled guilty to the charges against him. This plea was an open, non-negotiated plea. According to the State, after scoring the charged offenses and Perez-Diaz's extensive prior criminal record, the lowest permissible sentence which could be imposed under the Criminal Punishment Code is 168.3 months which is approximately fourteen years in prison.[1] Prior to sentencing, the State announced that it was seeking a twenty-year sentence of incarceration followed by five years of probation, and Perez-Diaz filed a motion seeking a downward departure from the sentencing guidelines.

After hearing from four of the victims, who confirmed the facts previously articulated in this opinion; considering the State's request for a twenty-year prison sentence followed by five years of probation; and considering Perez-Diaz's motion for a downward departure from the sentencing guidelines, the trial court granted Perez-Diaz's motion and imposed a downward departure sentence of six years in prison followed by six years of probation.

Perez-Diaz offered two grounds in support of his motion for a downward departure sentence: (1) the offenses were committed in an unsophisticated manner and this was an isolated incident for which he has shown remorse, which is a

---

[1] Perez-Diaz contends that the lowest permissible sentence under the Criminal Punishment Code is 163.2 months, or approximately thirteen years.

statutory mitigating factor pursuant to section 921.0026(2)(j), Florida Statutes (2013); and (2) Perez-Diaz "should be sentenced proportionately to Mailin Robaina, an equally or more culpable co-defendant," a non-statutory mitigating factor. The trial court concluded that the record did not support a downward departure based on the statutory mitigating factor set forth in section 921.0026(2)(j), but imposed a downward departure sentence based on a modified version of Perez-Diaz's second ground for a departure sentence. Because the trial court did not depart from the sentencing guidelines on the first ground, and the record reflects that the evidence does not support a downward departure on that ground, we confine our analysis to the modified second ground relied on by the trial court.

## ANALYSIS

Section 921.0026(2), of the Florida Statutes (2013), sets forth a non-exclusive list of mitigating circumstances for the imposition of a downward departure sentence from the sentencing guidelines. Because the statutory list of mitigating circumstances is expressly non-exhaustive, Florida courts have held that a basis for a downward departure will be upheld if there is competent substantial evidence to support the stated basis, so long as the purported basis for departure is consistent with legislative sentencing policies and is not otherwise prohibited. State v. Hodges, 151 So. 3d 531, 533 (Fla. 3d DCA 2014); State v. Bowman, 123

5

So. 3d 107, 109 (Fla. 1st DCA 2013); State v. Knox, 990 So. 2d 665, 669 (Fla. 5th DCA 2008).

Perez-Diaz sought a downward departure sentence based on the recognized non-statutory ground that a reduction of a defendant's sentence is proper in order to provide parity with the sentence of a co-defendant who was at least, if not more, culpable than the defendant. See Sanders v. State, 510 So. 2d 296, 298 (Fla. 1987); State v. Fernandez, 927 So. 2d 939, 941 (Fla. 3d DCA 2006). Perez-Diaz's argument was based on the false premise that because Mailin was an active participant in the robberies and he and Mailin were co-defendants, and thus both principles to the crimes committed at the party, they were equally culpable. However, culpability for sentencing purposes is not determined solely based on a review of the charging document. As the Florida Supreme Court stated in Sanders, the validity of a departure sentence based on equal culpability must be decided on the facts and circumstances of the case. Sanders, 510 So. 2d at 298.

A review of the record in this case reflects that Perez-Diaz and Mailin were not equally culpable and were not similarly situated. The victims testified that it was Perez-Diaz, not Mailin, who threatened them with a machete, ordered them into the house, and screamed at them to get onto their knees while swinging the machete, and ordered them to empty their pockets and place their wallets, watches, and cell phones on the table. Perez-Diaz not only threatened and terrorized these

6

teenagers, he punched one of the girls in the face with his fist and hit at least one of the other minors with the machete. Although Mailin helped collect the victims' valuables, it is undisputed that she was unarmed and did not personally strike anyone. The deadly force and non-deadly force directed at the victims all came from Perez-Diaz, and the victims testified that Perez-Diaz was the one in control. The record also reflects that Perez-Diaz was charged with and pled to an offense that Mailin was not charged with—fraudulent use of a credit card, which was based on Perez-Diaz's attempt to use a credit card stolen from one of the victims. Thus, the record does not contain competent substantial evidence that Perez-Diaz and Mailin were equally culpable. Perez-Diaz, by any standard, was by far the more culpable defendant.

Perez-Diaz and Mailin were also not similarly situated. Perez-Diaz has an extensive criminal record. He had twenty-four prior misdemeanor and two prior felony convictions. Many of these offenses were as a result of domestic violence against the mother of his children. The State also presented evidence that after Perez-Diaz was released from custody pending trial on the charges in the instant case, he was re-arrested on yet another act of domestic violence and was returned to custody. In contrast, there was no evidence presented that Mailin has had any prior contact with the system, and Mailin entered into a negotiated plea wherein she agreed to cooperate with the State.

7

Based on this record, it is clear that Perez-Diaz and Mailin were not equally culpable and were not similarly situated. We therefore find that a downward departure sentence imposed to provide sentencing parity with a co-defendant who was at least, if not more culpable, than Perez-Diaz is not supported by competent substantial evidence.

Perhaps recognizing that the evidence did not support a finding that these two defendants were equally culpable, the trial court departed downward from the sentencing guidelines based on its finding that Perez-Diaz and Mailin were "comparatively culpable," and that the Florida Supreme Court's proportionality analysis in death penalty cases "should be utilized in all cases." This was error.

First, as the Florida Supreme Court has consistently stated: "death is different." Ocha v. State, 826 So. 2d 956, 964 (Fla. 2002) ("This Court has long adhered to the idea that '[I]n the field of criminal law, there is no doubt that 'death is different[.]'") (quoting Hamblen v. State, 527 So. 2d 800, 804 (Fla. 1988)). And the differences that are applicable to our analysis are obvious. The only permissible sentences under Florida's current statutory scheme for an adult who commits first degree murder is life in prison without the possibility of parole, or death. Mitigation of a first degree murder sentence is not permitted. § 921.0026, Fla. Stat. (2013) (providing that section 921.0026 does not apply to any capital felony). Section 921.0026, which permits the imposition of a downward departure

8

sentence under certain circumstances, does not apply to first degree murder convictions because the sentence for a first degree murder conviction of an adult **may not be mitigated.** It may only be **aggravated** to a sentence of death. Aggravation of the sentence to a sentence of death may only be imposed after consideration of all of the aggravating and mitigating circumstances and after a finding that the aggravating circumstances outweigh the mitigating circumstances. A proportionality analysis is only performed after a finding is made that the aggravating circumstances outweigh the mitigating circumstances. Thus, proportionality in a death penalty case is the last step in the sentencing analysis when determining whether the sentence should be aggravated to a sentence of death. In essence, it is the last line of defense against **aggravation** of a life sentence to a sentence of death.

Second, as the Florida Supreme Court has long held, a "proportionality review requires a 'discrete analysis of the facts, entailing a *qualitative* review by this Court of the underlying basis for each aggravator and mitigator rather than a quantitative analysis.'" Ocha v. State, 826 So. 2d at 965-96 (quoting Urbin v. State, 714 So. 2d 411, 416 (Fla. 1998)). See also Silvia v. State, 60 So. 3d 959, 974 (Fla. 2011) (holding that a proportionality analysis entails a qualitative, rather than a quantitative, review of the aggravating and mitigating circumstances). Thus, under a proportionality analysis, the trial court would have been required to

9

review the facts and circumstances regarding the offenses committed, not just the crimes that were charged, as well as all of the aggravating and mitigating circumstances, which obviously would have included Perez-Diaz's lengthy criminal record and Mailin's cooperation with the State. Moreover, proportionality reviews are conducted in death penalty cases because the death penalty is "reserved only for those cases where the most aggravating and least mitigating circumstances exist." Terry v. State, 668 So. 2d 954, 965 (Fla. 1996). Thus, when deciding whether death is a proportionate penalty, the Court must perform a "comprehensive analysis in order to determine whether the crime falls within the category of both the most aggravated and the least mitigated of murders, thereby assuring uniformity in the application of the sentence." Silvia v. State, 60 So. 3d at 974 (internal quotation and citation omitted). "Accordingly, the Court considers the totality of the circumstances and compares the case with other similar capital cases. Id.

Proportionality cannot serve as a basis for a downward departure where co-defendants are not equally culpable. Rather, it may become a consideration after a trial court has concluded that the co-defendant is at least as culpable or more culpable as the defendant being sentenced and therefore it may depart downward from the sentencing guidelines, and the court proceeds to the next step, which is to

then determine whether it should depart, and if so, what would be an appropriate sentence based on the aggravating and mitigating circumstances.

Third, the Florida Supreme Court has specifically limited application of a proportionality analysis when considering whether to impose a downward departure sentence from the sentencing guidelines to those situations where the co-defendant was at least or more culpable than the defendant being sentenced. The Florida Supreme Court unequivocally stated in <u>Sanders</u> that "**the judge would only be justified in departing downward to meet a codefendant's sentence if the record established beyond a reasonable doubt that the culpability of the defendant was no greater than that of the codefendant**." 510 So. 2d at 298 (emphasis added).

<u>**CONCLUSION**</u>

Although we agree that authority exists to support the general proposition that co-defendants should not be treated differently on same or similar facts, <u>see</u> <u>Slater v. State</u>, 316 So. 2d 539 (Fla. 1975); <u>Fernandez</u>, 927 So. 2d at 941 (confirming that consideration of a co-defendant's downward departure sentence "is a legally sufficient reason to support a decision to consider a downward departure sentence"), a downward departure to achieve parity with a co-defendant's sentence is justified "only . . . if the record establishe[s] beyond a

reasonable doubt that the culpability of the defendant was no greater than that of the codefendant." Sanders, 510 So. 2d at 298.

The record reveals the opposite to be true. Perez-Diaz was far more culpable than Mailin. Perez-Diaz is the only one who armed himself with a deadly weapon (a machete); ordered the victims into the house and onto their knees; demanded the victims empty their pockets and give up their property; threatened the victims with a machete; and used actual force by punching a minor female victim in the face with his fist and striking a minor male victim with the machete. Perez-Diaz also attempted to use a credit card stolen from one of the victims.

The victims testified that Diaz-Perez was the one in control, and the evidence reflects that Mailin merely assisted Perez-Diaz by screaming at the victims and collecting their property into a bag. She did not threaten any of the party-goers; carry, threaten, or use a weapon; or physically harm any of the victims. Mailin was also not charged with, nor was there any evidence introduced that Mailin attempted to use any of the credit cards stolen from the victims.

Additionally, whereas Perez-Diaz had a long list of criminal convictions, many of which involved acts of violence, and a new arrest during the pendency of the instant case, there was no evidence that Mailin had any prior contacts with the criminal system. And Perez-Diaz's plea may very well have been motivated by Mailin's earlier negotiated plea wherein she agreed to cooperate with the State.

12

Because there is no competent substantial evidence to establish that Perez-Diaz's culpability was no greater than Mailin's and that he was similarly situated, nor any legal ground or competent substantial evidence to support a downward departure that the two were "comparatively culpable," we reverse and remand for sentencing under the sentencing guidelines.

Reversed and remanded.

**State of Florida v. Yanker Orlando Perez-Diaz**
**3D14-2885**

EMAS, J., concurring.

I concur fully, but write separately to address more broadly one of the points made in the majority opinion.

The trial court imposed a downward departure sentence, concluding that the departure was necessary to achieve "sentencing parity" and to correct what the court perceived to be a "gross disparity" between Perez-Diaz's guideline sentence

13

and the negotiated sentence imposed on the co-defendant. I conclude that, given the circumstances of the instant case, this is not a permissible basis for a downward departure.

As the majority opinion notes, a trial court does have the discretion, under proper circumstances and an adequate showing, to match the sentences of two defendants where the previously-sentenced co-defendant is at least equally as culpable as the defendant being sentenced. See, e.g., Sanders v. State, 510 So. 2d 296, 298 (Fla. 1987) (holding trial court, in determining proper sentence of a defendant, may validly consider co-defendant's below-guideline sentence, where the co-defendant is "at least, if not more, culpable than defendant"); State v. Fernandez, 927 So. 2d 939 (Fla. 3d DCA 2006); Marsh v. State, 546 So. 2d 33 (Fla. 3d DCA 1989).

However, Perez-Diaz asks this court to extend the rationale of Sanders to a fundamentally different set of circumstances: even if the co-defendant was not "equally as culpable" as Perez-Diaz, the trial court can still validly impose a downward departure sentence upon Perez-Diaz because of the "gross disparity" in the sentences, given the proportionate (though unequal) culpability of the two defendants. In other words, Perez-Diaz appears to argue, even if he was more culpable than his co-defendant, the gross disparity between his minimum guidelines sentence and the negotiated sentence imposed on the less-culpable co-

14

defendant does not fairly reflect the relative culpability of the two defendants, and the trial court should have the discretion to depart downward on Perez-Diaz's sentence to produce a more equitable sentence.

Although there does not appear to be any case law in Florida on this precise issue, I conclude this is not a permissible basis for departure under our existing statutory sentencing scheme. Section 921.0026, Florida Statutes (2013), entitled "Mitigating Circumstances," is a part of Florida's Criminal Punishment Code. It establishes guidelines for imposing downward departure sentences, and provides a non-exhaustive list of circumstances under which a downward departure may lawfully be imposed. This section provides in pertinent part:

> (1) A downward departure from the lowest permissible sentence, as calculated according to the total sentence points pursuant to s. 921.0024, is prohibited unless there are circumstances or factors that reasonably justify the downward departure. Mitigating factors to be considered include, but are not limited to, those listed in subsection (2). The imposition of a sentence below the lowest permissible sentence is subject to appellate review under chapter 924, **but the extent of downward departure is not subject to appellate review**.

§ 921.0026, Fla. Stat. (2013) (Emphasis added).

Because the statutory list of mitigating circumstances is expressly non-exhaustive, Florida courts have held that a basis for downward departure will be upheld if there is competent substantial evidence to support the stated basis, so long as the purported basis for departure is consistent with legislative sentencing

15

policies and is not otherwise prohibited.  State v. Hodges, 151 So. 3d 531 (Fla. 3d DCA 2014); State v. Bowman, 123 So. 3d 107 (Fla. 1st DCA 2013); State v. Knox, 990 So. 2d 665 (Fla. 5th DCA 2008).

I do not believe the concept of correcting an alleged "gross disparity" in the sentences imposed upon co-defendants of unequal culpability can constitute a valid basis for departure under the Criminal Punishment Code.  The reason is simple: the only way in which one can determine if this is a valid basis for departure is by comparing the actual sentences imposed upon the two defendants.  In other words, this basis for departure is premised on the contention that the downward departure sentence ameliorates the "gross disparity" and properly reflects the "relative culpability" of the co-defendants.  But this can only be determined by reviewing the downward departure sentence ultimately imposed by the trial court.  However, section 921.0026(1) expressly provides that "the extent of the downward departure is not subject to appellate review."  Because the statute prohibits appellate review of the extent of the downward departure, any purported basis for downward departure whose very validity *requires* a review of the extent of the departure is inconsistent with the legislative sentencing policies and cannot serve as a permissible basis for departure.

If in fact the trial court decided to impose a downward departure sentence on Perez-Diaz in order to correct the "gross disparity" in the defendants' sentences

(relative to their unequal culpability) and to achieve "sentencing parity," an appellate court would *necessarily* have to consider the sentence imposed by the trial court upon Perez-Diaz (i.e., "the extent of the downward departure"). How else could an appellate court determine whether the basis for a downward departure was valid (i.e., achieving sentencing parity between co-defendants with admittedly different levels culpability)? Yet such review by an appellate court is expressly prohibited by section 921.0026(1).

If we were to permit such a concept to serve as a valid basis for downward departure, the only determination this court could make is to review the record to determine that the co-defendants had relatively different levels of culpability. But because we are prohibited from reviewing the extent of the downward departure itself, a trial court would be free to impose the exact same sentence on co-defendants of unequal culpability, and the State would not have the right, nor this court the authority, to review such a sentence.

By contrast, where the basis for departure is that a co-defendant who has already been sentenced was at least as equally culpable as the defendant, there is no need for the court to review the extent of the departure. Assuming that there is competent substantial evidence to establish that the defendants were equally culpable (or that the previously sentenced co-defendant was more culpable than the defendant) the trial court has the discretion to impose a sentence that "matches" the

already sentenced co-defendant.  Sanders, 510 So. 2d at 298.  There is no need, upon appeal, for this court to review the ultimate sentence imposed on the defendant; our task is limited to determining whether the evidence supports the trial court's determination of equal culpability.  If this requirement is met, the trial court may validly impose a downward departure sentence equal to (or less than) that imposed on the co-defendant, since the co-defendant was equally or more culpable than the defendant.

However, the rationale of Sanders is inapplicable to the circumstances of the instant case.  The concept of correcting a perceived disparity in sentences of defendants with unequal culpability—the more amorphous concept of somehow adjusting the disparate sentences of co-defendants to more accurately reflect their relative (but unequal) levels of culpability— is incapable of review without actually considering the extent of the downward departure sentence imposed.

Take the instant case for example.  It is clear that Perez-Diaz was significantly more culpable than his co-defendant.  Perez-Diaz was the only one who brandished a machete; he was the only one who struck a victim of the robbery (Perez-Diaz actually struck two of the victims); and he was the only one who made direct threats to the victims in order to achieve the objective of the robbery.  Given this clear and significant disparity in culpability between Perez-Diaz and his co-defendant, how can one say that Perez-Diaz's minimum sentence under the

18

guidelines (approximately 13 years) is "grossly disproportionate" to the below-guidelines sentence of a less culpable co-defendant?[2]

More to the point, even if such a finding could be made, how can this court determine whether the ultimate downward departure sentence imposed on Perez-Diaz achieves "sentencing parity" or corrects this "gross disparity" without actually reviewing the extent of Perez-Diaz's downward departure sentence? If, as the statute provides, "the extent of the downward departure is not subject to appellate review," then the trial court in this case, after making a finding that a downward departure was necessary to correct a gross disparity in sentences of co-defendants with unequal culpability, could have theoretically imposed *the very same sentence* it imposed on the co-defendant (or, presumably could impose an even lower sentence on the more-culpable defendant), and such a sentence would not be reviewable by this court under the express language of section 921.0026(1). But it would nonetheless be a patently improper sentence given the fact that the co-defendants were *not* equally culpable.

I therefore conclude that the concept of achieving "sentencing parity" or correcting a "gross disparity" in the sentence of a defendant who is more culpable

---

[2] In addition to the fact that Perez-Diaz was the more culpable defendant, the downward departure sentence of co-defendant was the result of a negotiated plea by which the co-defendant agreed to cooperate in the continued prosecution of Perez-Diaz, providing additional reasons for any asserted "disparity" between the co-defendant's downward departure sentence and Perez-Diaz's minimum guidelines sentence.

than the previously-sentenced co-defendant is not a permissible basis for downward departure. The validity of such a purported basis necessarily requires a review of the extent of the downward departure. Because the review of the extent of the downward departure is prohibited under section 921.0026(1), this asserted basis for departure is incompatible with the legislative sentencing policies of the Criminal Punishment Code and is therefore impermissible.