ROTHENBERG, J.
The State of Florida appeals the downward ■ departure' sentence imposed by the trial court in its effort to achieve sentencing parity between two' co-defendants. Because the record reflects that these two defendants were not similarly situated and not equally culpable, we conclude that there is no legal basis'to sustain the downward departure sentence. Accordingly, we reverse the sentence and remand for a resentencing of the defendant, Yanker Orlando Perez-Diaz.
The operative facts are as follows. Perez-Diaz, Mailin Robaina, and Mailin’s brother, Jorge Robaina, were charged with various offenses stemming from events that occurred during a house party they had attended. Because the downward departure sentence was to achieve sentencing parity between the defendant and his co-defendant, Mailin, we confine our discussion to these two défendants.
Had the defendants proceeded to trial, the State was prepared to present the following evidence. While at a party, Perez-Diaz discovered that his wallet was missing. Believing that someone at the party had stolen it, Perez-Diaz armed himself with a machete, threatened to slice everyone up, ordered everyone into the house, yelled at everyone to get down onto the floor and on their knees,' and demanded that they empty their pockets and place their valuables on a table. As the party-goers emptied their pockets and Mailin and Perez-Diaz collected the victims’ wallets, watches, and cell phones, Mailin and Perez-Diaz yelled at the victims, and Perez-Diaz. threatened the victims with the machete. In addition to threatening the victims with the machete, • Perez-Diaz punched a female captive in the face and *898 struck another captive with the machete. The victims and witnesses testified that although Mailin helped collect the victims’ property, Perez-Diaz was the one in control. Perez-Diaz and Mailin then fled the scene in a car driven by Mailin’s brother, and thereafter, Perez-Diaz attempted to make fraudulent purchases with the stolen credit cards. Perez-Diaz was twenty-three years old when he committed these crimes. All of the victims were teenagers under the age of, eighteen.
Perez-Diaz, Mailin, and Mailin’s brother were all arrested and charged with committing various ■ crimes. Perez-Diaz and Mailin were charged with four .counts of armed robbery, one count of aggravated battery with a deadly weapon, one count of aggravated assault with a deadly weapon, and one count of grand theft. Perez-Diaz was also charged with one count of fraudulent use of a stolen credit card.
On May 20,, 2014, Mailin entered into a negotiated plea with the State wherein she agreed to plead guilty to the charges, provide a truthful .statement regarding the events on the night of the robberies and related crimes, and “cooperate” with the State. In exchange for Mailin’s guilty plea and cooperation, she was sentenced to two years of community control followed by ten years of probation.
Thereafter, Perez-Diaz also pled guilty to the charges against him. This plea was an open, non-negotiated plea. According to the State, after scoring the charged offenses and Perez-Diaz’s extensive prior criminal record, the lowest' permissible sentence which could be imposed under the Criminal Punishment Code is 168.3 months which is approximately fourteen years in prison.[1] Prior to sentencing, the State announced that it was seeking a twenty-year sentence of incarceration followed by five years of probation, and Perez-Diaz filed a motion seeking a downward departure from the sentencing guidelines.
After hearing from four of the victims, who confirmed the facts previously articulated in this opinion; considering the State’s request for a twenty-year prison sentence followed by five years of probation; and considering Perez-Diaz’s motion for a downward departure from the sentencing guidelines, the trial -court granted Perez-Diaz’s motion and imposed a downward departure sentence of six years in prison followed by six years of probation.
Perez-Diaz offered two grounds in support of his motion- for a downward departure sentence: (1) the offenses were committed in an unsophisticated manner and this was an isolated incident for which he has shown remorse, which is a statutory mitigating factor pursuant to section 921.0026(2)0, Florida Statutes (2013); and (2) Perez-Diaz “should be sentenced proportionately to Mailin Robaina, an equally or more culpable co-defendant,” a non-statutory mitigating factor. The trial court, concluded that the record did not support a downward departure based on the statutory mitigating factor set forth in section 921.0026(2)(j), but imposed a downward departure sentence based on a modified version of Perez-Diaz’s second ground for a departure sentence. Because the trial court did not depart from the sentencing guidelines on the first ground, and the record reflects that the evidence does not support a downward departure on that ground, we confine our analysis to the modified second ground relied on by the trial court.

ANALYSIS

Section 921.0026(2), of the Florida Statutes (2013), sets forth a non-exclusive *899 list of mitigating circumstances for the. imposition of a downward departure sentence from the sentencing guidelines. .Because the statutory list of mitigating circumstances is expressly non-exhaustive, Florida courts have held that a basis for a downward departure will be upheld if there is competent substantial evidence to support the stated basis, so long .as the purported basis for departure is consistent with legislative sentencing policies and is not otherwise prohibited. State v. Hodges, 151 So.3d 531, 533 (Fla. 3d DCA 2014); State v. Bowman, 123 So.3d 107, 109 (Fla. 1st DCA 2013); State v. Knox, 990 So.2d 665, 669 (Fla. 5th DCA 2008).
Perez-Diaz sought a downward departure sentence based on the recognized non-statutory ground that a reduction of a defendant’s sentence is proper in order , to provide parity with the sentence of a co-defendant who was at least, if not more, culpable than the defendant. See Sanders v. State, 510 So.2d 296, 298 (Fla.1987); State v. Fernandez, 927 So.2d 939, 941 (Fla. 3d DCA 2006). Perez-Diaz’s argument was based on the false premise that because Mailin was an active participant in the robberies and he and Mailin were co-defendants, and thus both principles to the crimes committed at the party, they were equally culpable. However, culpability for sentencing purposes is not determined solely based on a review of the charging document. As the Florida Supreme Court stated in Sanders, the validity of a departure sentence based on equal culpability must be decided on the facts and circumstances of the case. Sanders, 510 So.2d at 298.
A review of the record in this case reflects that Perez-Diaz and Mailin were not equally culpable ■ and were not similarly situated. ■ The victims testified that it was Perez-Diaz, not Mailin, who threatened them with a machete, ordered them into the house,' and screamed at them to get onto their knees while swinging.the machete, and qrdered them to empty their pockets and place their wallets, watches, and cell phones on the table. Perez-Diaz not only threatened and terrorized these teenagers, he punched one of the girls in the face with his fist and hit at least one of the other minors with the machete. Although Mailin helped collect the victims’ valuables^ it is undisputed that she was unarmed and did not personally strike anyone. The deadly force and non-deadly force directed at the victims all came from Perez-Diaz, and the victims testified that Perez-Diaz was the one in control. The record also reflects that Perez-Diaz was charged with and pled to an offense that Mailin was not charged with — fraudulent use of a credit card, which wag based on Perez-Diaz’s attempt to use a credit card stolen from one' of the victims. Thus, the record does not contairi' competent 'substantial evidence that Perez-Diaz and Mai-lin were equally culpable. Perez-Diaz, by any standard, was by far the more culpable defendant.
Perez-Diaz and Mailin were also not similarly situated. Perez-Diaz has an extensive. criminal record. He had twenty-four prior misdemeanor and two prior felony convictions. Many of these offenses were as a result of domestic violence against the mother of his children. The State also presented evidence that after Perez-Diaz was released . from custody pending trial on the charges in the instant case, he was re-arrested on yet another act of domestic violence and was returned to custody. In contrast,. there was no evidence presented that Mailin has had any prior contact with the system, and Mailin entered into a negotiated, plea wherein she agreed to cooperate with .the State.
Based on-, this record, it is clear .that Perez-Diaz and, Mailin were not equally *900 culpable and were not similarly- situated. We therefore find that a downward departure sentence imposed to provide sentencing parity with a co-defendant who was at least, if not more culpable, than Perez-Diaz is not supported by - competent substantial evidence.
Perhaps recognizing that the evidence did not support a finding that these two defendants were equally culpable, the trial court departed downward from "the sentencing guidelines based on its finding that Perez-Diaz and Mailin were “comparatively culpable,” and that the Florida Supreme Court’s proportionality analysis in death penalty cases “should be utilized in all cases.” This was error.
First, as the Florida Supreme Court has consistently stated: “death is different.” Ocha v. State, 826 So.2d 956, 964 (Fla.2002); (“This Court has long adhered to the idea that ‘[I]n the field of criminal law, there is no doubt that ‘death is different[.]’”) (quoting Hamblen v. State, 527 So.2d 800, 804 (Fla.1988)). And the differences that are applicable to our analysis are obvious. The only permissible sentences under Florida’s current statutory scheme for an adult who commits "first degree murder is life in prison without the possibility of parole, or death. Mitigation of a first degree murder sentence is riot permitted. § 921.0026, Fla. Stat. (2013) (providing that section 921.0026 does not apply' to any capital felony). Section 921.0026, which permits the imposition of a downward departure sentence under certain circumstances, does not apply to first degree murder convictions because the sentence for a first degree murder conviction of an adult may not be mitigated. It may only be aggravated to a sentence of death. Aggravation of the sentence to a sentence of death may only be imposed after consideration of all of the aggravating and mitigating circumstances and after a finding that the aggravating circumstances outweigh the mitigating circumstances. A proportionality analysis is only performed after a finding is made that the aggravating circumstances outweigh the mitigating circumstances. Thus, proportionality in a death penalty case is the last step in the sentencing analysis when determining whether the sentence should be aggravated to a sentence of death. Iri essence, it is the last line of defense against aggravation of a life sentence to a sentence of death.
Second, as the Florida Supreme Court has long held, a “proportionality review requires a ‘discrete analysis of the facts, entailing a qualitative review by this Court of the underlying basis for each aggravator and mitigator rather than a "quantitative analysis.’” Ocha v. State, 826 So.2d at 965-66 (quoting Urbin v. State, 714 So.2d 411, 416 (Fla.1998)). See also Silvia v. State, 60 So.3d 959, 974 (Fla.2011) (holding that a proportionality analysis entails a qualitative, rather "than á quantitative, review of the aggravating and mitigating circumstances). Thus, under a proportionality analysis, the trial, court would have been required to review the facts and circumstances regarding the offenses committed, not just the crimes that were charged, as well as all of the aggravating and mitigating circumstances, which obviously would have included Perez-Diaz’s lengthy criminal record and Mailin’s cooperation with the State. Moreover, proportionality reviews are conducted in death penalty cases because the death penalty is “reserved only for those cases where the most aggravating and least mitigating circumstances exist.” Terry v. State, 668 So.2d 954, 965 (Fla.1996). Thus, when deciding whether death is a proportionate penalty, the Court must perform a “comprehensive analysis in order to determine whether the crime falls within the category *901 of both the most aggravated and the least mitigated of murders, thereby assuring uniformity in the application of the sentence.” Silvia v. State, 60 So.3d at 974 (internal- quotation and citation omitted). “Accordingly, the Court considers the totality of the circumstances and compares the case with other similar capital-cases.” Id.
Proportionality cannot serve as a basis for a downward departure where co-defendants are not equally culpable. Rather, it may become a consideration after a trial court has concluded that the co-defendant is at least as culpable or more culpable as the defendant being sentenced and therefore it may depart downward from the sentencing guidelines, and the court proceeds to the next step, which is to then determine whether it should depart, and if so, what would be an appropriate sentence based on the aggravating and mitigating circumstances. '
Third, the Florida Supreme Court has specifically limited application of a proportionality analysis when considering whether to impose a downward departure sentence from the sentencing guidelines to those situations where the co-defendant was at least or more culpable than the defendant being sentenced. The Florida Supreme Court unequivocally stated in Sanders that “the judge would only be justified in departing downward to meet a codefendant’s sentence if the record established beyond a reasonable doubt that the culpability of the defendant was no greater than that of the codefen-dant.” 510 So.2d at 298 (emphasis added).

CONCLUSION

Although we agree that authority exists to support the general proposition that co-defendants should not be treated differently on same or similar facts, see Slater v. State, 316 So.2d 539 (Fla.1975); Fernandez, 927 So.2d at 941 (confirming that consideration of a co-defendant’s downward departure sentence “is a legally sufficient reason to support a decision to consider a downward departure sentence”), a downward departure to achieve parity with a co-defendant’s sentence is justified “only ... if the record established] beyond a reasonable doubt that the culpability of the defendant was no greater than that of the codefendant.” Sanders, 510 So.2d at 298.
The record reveals the opposite to be true. Perez-Diaz was far more culpable than Mailin. Perez-Diaz is the, only one who armed himself with a deadly weapon (a machete); ordered the victims into the house and onto their knees; demanded the victims empty their pockets and give up their property; threatened the victims with a machete; and used actual force by punching a minor female victim in the face with his fist and striking a minor male victim with the machete. Perez-Diaz also attempted to use a credit card stolen from one of the victims.
The victims testified that Diaz-Perez was the one in control, and the evidence reflects that Mailin merely assisted Perez-Diaz by screaming at the victims and collecting their property into a bag. She did not threaten any of the party-goers; carry, threaten, or use a weapon; or physically harm any of the victims. , Mailin was also not charged with,, nor was there any evidence introduced that Mailin attempted to use ,any of the credit cards stolen from the victims.
Additionally, whereas Perez-Diaz had a long list of criminal convictions, many of which involved acts of violence,' and a new arrest during the pendency of the instant case, there was no evidence that Mailin had any prior contacts with the criminal system. And Perez-Diaz’s plea may very well have been motivated by Mailin’s earli *902 er negotiated, plea wherein she agreed to cooperate with the State.
Because there is no competent substantial evidence to establish that Perez-Diaz’s culpability was no greater than Mailin’s and that he was similarly situated, nor any legal ground or competent substantial evidence to support a downward departure that the two were “comparatively culpable,” we reverse and remand for sentencing under the sentencing guidelines.'
Reversed and remanded.

. Perez-Diaz contends that the lowest permissible sentence under the Criminal Punishment Code is 163.2 months, or approximately thirteen years.