827 So.2d 1022 (2002)
The STATE of Florida, Appellant,
v.
Charles A. STEADMAN, Appellee.
No. 3D01-3326.
District Court of Appeal of Florida, Third District.
September 4, 2002.
Rehearing and Certification Denied October 23, 2002.
*1023 Robert A. Butterworth, Attorney General, and Kristine Keaton, Assistant Attorney General, for appellant.
Benedict P. Kuehne of Sale & Kuehne, P.A. and Susan Dmitrovsky, for appellee.
Before COPE, GREEN, and RAMIREZ, JJ.
RAMIREZ, J.
The State of Florida appeals the imposition of a downward departure sentence of seven years as a habitual offender, with a three-year mandatory minimum term. We affirm the sentence based on the trial court's stated reason for departure, that the police officers engaged in sentence manipulation.
Appellee Charles A. Steadman was arrested on April 24, 2001, and charged in six separate informations with sale of cocaine, possession of cocaine, and sale of cocaine within 1,000 feet of a school. The charges stemmed from six sales of minor quantities of crack cocaine ($10 to $20 each) to undercover City of Miami Police Officer Benjamin Payen on March 7, 9, 12, 23, and April 6, and 12, 2001. Steadman pled guilty in all six cases in exchange for a downward departure sentence as a habitual offender, and the imposition of a sentence *1024 of seven years with a three-year minimum mandatory term. The State had previously offered Steadman a 15.4-year plea. The State-prepared sentencing score sheet for all six cases indicated a guideline range of 15.4 years to life.
The first undercover sale took place in the early evening of March 7, 2001. Officer Payen drove an unmarked police car into a neighborhood adjacent to Edison Middle School in Miami-Dade County with the intent of purchasing crack cocaine. Steadman "flagged down" Officer Payen and asked what he wanted. Officer Payen asked for two "dimes" worth of crack rock. Steadman instructed the officer to drive around the block. When Officer Payen returned to the same location, Steadman handed him two crack rocks for $20. Officer Payen thereafter advised a waiting police unit of the sale. The police did not arrest Steadman at that time, and instead approached Steadman and ordered him to identify himself, submit to a photograph, and provide other personal information. Steadman was subsequently released.
Between March 9 and April 12, 2001, Steadman made five more sales to Officer Payen, all involving $10 or $20 worth of cocaine. All six sales took place at the same location, within 1000 feet of Edison Middle School. Police Sergeant Joseph Schillaci, a supervisor with the City of Miami Police Department, testified that the undercover drug operation "North Storm" was an effort to target individuals selling drugs within a school zone. He candidly admitted that the police department purposely decided to forego any arrest of Steadman until the police had first made multiple purchases, in order to generate enough quantity of cocaine to command a lengthy prison sentence for Steadman. The State does not dispute that the only reason Steadman was not arrested after his first sale was to manipulate Steadman's sentence so as to obtain an enhanced punishment. The State has offered no legitimate law enforcement purpose for the police conduct whose only purpose was to increase the severity of Steadman's sentence.
The sentencing guidelines for Steadman's first cocaine sale called for a sentence of 6.6 years, with a three-year minimum mandatory. With each decision to defer an arrest and instead arrange another undercover buy, the police increased the sentencing guidelines range substantially. In doing so, the police allowed more cocaine to be sold within 1000 feet of Edison Middle School. The State now argues that the trial court imposed a downward departure sentence based on an invalid reason. We disagree. An important consideration in our decision is the fact that the judge imposed a sentence harsher than the guideline sentence had Steadman been arrested after the first sale.
A trial court may depart downward from the minimum sentence required by the guidelines when circumstances reasonably justify mitigation of the sentence. See State v. Stanton, 781 So.2d 1129, 1131 (Fla. 3d DCA 2001); State v. Baksh, 758 So.2d 1222, 1224 (Fla. 4th DCA 2000). Departures based on reasons not delineated in section 921.0026(2), Florida Statutes (1999), which are supported by the record, are permissible. See State v. Laroe, 821 So.2d 1199, (Fla. 5th DCA 2002); Stanton, 781 So.2d at 1131 (section 921.0026 list of mitigating circumstances is nonexclusive). In this case, the record amply supports the trial court's reason for departure, that the police were guilty of sentence manipulation.
The issue of sentence manipulation as a reason for departure is one of first impression in Florida. Other federal and state courts have wrestled with this issue with mixed results. In People v. Smith, 120 *1025 Cal.Rptr.2d 831 (Cal.App.2d Dist.2002), a California district court held that "where the police have discretion in the amount of drugs to use in a sting operation and select an amount for no other reason than to maximize the defendant's sentence the police have acted in a manner so fundamentally unfair as to deny the defendant due process of law." Id. at 851. Some courts have required a showing that the police engaged in "outrageous conduct." See e.g., United States v. Lacey 86 F.3d 956, 963 (10th Cir.1996). The Lacey court suggests that activities not "in furtherance of legitimate law enforcement objectives" are, as a matter of law, "outrageous." Id. at 966. Other courts have required a showing of "extraordinary conduct" or "something less." See e.g., United States v. Montoya, 62 F.3d 1, 4-5 (1st Cir.1995). Some courts have required only a showing that the police conduct was "for the sole purpose of ratcheting up a sentence[.]" United States v. Shephard, 4 F.3d 647, 649 (8th Cir.1993).
To require a showing of "outrageous conduct" as a threshold to establishing sentence manipulation would be to reject the principle entirely because such a showing would amount to entrapment and would constitute a complete defense to the prosecution. However, the police conduct in this case did not rise to the level necessary for entrapment. Nevertheless, conduct which is not sufficient to excuse the defendant's actions may still warrant a downward departure sentence. "[T]he trial court can mitigate a sentence based on conduct that is not sufficient to excuse the crime." Hines v. State, 817 So.2d 964, 965 (Fla. 2d DCA 2002). See also State v. Rife, 789 So.2d 288, 296 (Fla.2001)(downward departure allowed in statutory rape case because victim was willing participant despite fact that consent is not legal defense to crime); State v. Mathis, 541 So.2d 744, 745 (Fla. 3d DCA 1989)(affirming downward departure sentence for aggravated battery because the victim provoked the defendant even though provocation was insufficient to find the defendant acted in self-defense).
When considering sentence manipulation as a basis for downward departure, the trial court's inquiry should focus on law enforcement intent: was the sting operation continued only to enhance the defendant's sentence or did legitimate law enforcement reasons exist to support the police conduct, such as to determine the extent of the criminal enterprise, to establish the defendant's guilt beyond a reasonable doubt, or to uncover any co-conspirators? If legitimate law enforcement concerns exist, then a downward departure based on sentence manipulation is not warranted. The intent standard prevents sentence manipulation for the purpose of enhancing punishment, does not interfere with undercover operations, and does not excuse a defendant. See Andrew G. Deiss, Comment: Making the Crime Fit the Punishment: Pre-Arrest Sentence Manipulation by Investigators Under the Sentencing Guidelines, U. Chi. Legal F. 419, 437 (1994).
By enacting sentencing guidelines, the legislature sought to impose uniformity in sentencing. See Fla. Stat. § 921.001(4) (2002). That purpose is undermined when law enforcement is allowed discretion to determine what a criminal's sentence will be. We therefore hold that, although a defendant does not have a right to be arrested in order to be prevented from committing further crimes, a trial court has discretion to impose a downward departure sentence, when law enforcement allows a defendant to continue criminal activities for no reason other than to enhance his or her sentence. We emphasize that our holding is predicated on the fact that the sentence imposed did not go below *1026 what Steadman would have received in the absence of the sentence manipulation.
Affirmed.