# Third District Court of Appeal

## State of Florida, July Term, A.D. 2013

Opinion filed November 12, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-779
Lower Tribunal No. 12-20046C
_____

**The State of Florida,**
Appellant,

vs.

**Albert Hodges,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Marisa Tinkler-Mendez, Judge.

Pamela Jo Bondi, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellant.

Carlos J. Martinez, Public Defender, and James Moody, Assistant Public Defender, for appellee.

Before WELLS, EMAS and LOGUE, JJ.

EMAS, J.

The State appeals from a downward departure sentence, imposed by the trial court without timely filing its written reasons, and with oral reasons that we determine to be invalid. We vacate the judgment and sentence and remand for further proceedings consistent with this opinion.

**FACTS**

The relevant facts are not in dispute. Albert Hodges was arrested on August 10, 2012 and subsequently charged by information with three counts of possession with intent to distribute cocaine and two counts of possession with intent to distribute marijuana.

Under the sentencing guidelines, Hodges' lowest permissible sentence was 36.3 months in prison. Hodges also qualified as a habitual felony offender. At a pretrial conference held by the trial court on March 19, 2013, the State and defense were unable to reach a negotiated plea: the State's final plea offer was 25 months in prison followed by two years' probation. Hodges rejected this offer and counteroffered with 18 months' state prison. The State rejected this offer and withdrew its original offer of 25 months. The trial judge, who acknowledged knowing nothing about the case,[1] offered Hodges 366 days in state prison. The State objected to the offer as below the lowest permissible sentence under the guidelines.

---

[1] The case was set for trial and it appears the judge below was a "backup judge" who intended to preside over the trial in place of the assigned trial court judge.

2

The trial court nevertheless extended the year-and-a-day offer to Hodges, and stated, as its sole reason for the downward departure, that Hodges scored so high primarily because his prior criminal history included a ten-year-old arson conviction.

Hodges accepted the plea, was sentenced as an habitual offender to 366 days in state prison, and the trial court indicated it would enter an order setting forth its reasons for the downward departure.

The State filed its notice of appeal on March 20, 2013, the day following the plea. The trial court did not enter a timely order setting forth its reasons for departure, nor did it timely file a transcript of the plea and sentencing hearing. More than a year after the State filed its notice of appeal, and after the State had filed its initial brief in this appeal, Hodges filed a motion to correct a sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).[2] Thereafter, on

---

[2] Rule 3.800(b)(2) provides:

> If an appeal is pending, a defendant or the state may file in the trial court a motion to correct a sentencing error. <u>The motion</u> may be filed by appellate counsel and <u>must be served before the party's first brief is served</u>. A notice of pending motion to correct sentencing error shall be filed in the appellate court, which notice automatically shall extend the time for the filing of the brief until 10 days after the clerk of circuit court transmits the supplemental record under Florida Rule of Appellate Procedure 9.140(f)(6).

(Emphasis added.)

The motion to correct sentencing error was not filed before the initial brief was

3

April 7, 2014, the trial court entered an order setting forth two reasons for its downward departure:

> The guidelines scoresheet included criminal history points based upon a conviction more than ten (10) years ago. While Mr. Hodges has some criminal past, this Court does not believe that a guideline sentence is justified.

> [T]he police had the basis to effectuate an arrest of the Defendant after the completion of the first hand-to-hand drug purchase. Instead, the police continued to surveil the Defendant, and waited to effectuate their arrest of the defendant. This would, in effect, then enhance the potential penalties that Mr. Hodges faced. See State v. Steadman, 108 So. 3d 1137 (Fla. 5th DCA 2013).[3]

## ANALYSIS

In Florida, sentencing for all non-capital offenses committed after October 1, 1998 is governed by the Criminal Punishment Code, enacted by the Florida Legislature and contained in Chapter 921, Florida Statutes. See also Fla. R. Crim. P. 3.704 (implementing, and providing procedural components for, the Criminal Punishment Code). Pursuant to section 921.0024(1)(a), Fla. Stat. (2012), a scoresheet is prepared for each defendant, which takes into account and assesses points based upon, *inter alia*, the severity of the defendant's primary offense at conviction, additional offenses at conviction, and prior criminal history. See

served, and no notice of pending motion to correct sentencing error was filed with this Court.

[3] The correct citation for Steadman is 827 So. 2d 1022 (Fla. 3d DCA 2002). The citation in the trial court's order is to State v. Henderson, another downward departure decision inapplicable to the facts at issue.

4

generally, §§ 921.022-.024, Fla. Stat. (2012).  A score is assigned to each primary offense, additional offense, and prior criminal history.  These points are added together and, after additional calculations not relevant here, the resulting score (represented in months) establishes a defendant's "lowest permissible sentence" which "is assumed to be the lowest appropriate sentence for the offender being sentenced."  § 921.00265(1), Fla. Stat. (2012).  The trial court may not impose a sentence below the lowest permissible sentence unless there is a valid mitigating circumstance to justify a downward departure. § 921.0026(1), Fla. Stat. (2012).  Section 921.0026(2) provides a non-exclusive list of mitigating circumstances for a valid downward departure.  While a trial court may depart for a reason other than those set forth in section 921.0026(2), it may only do so if the articulated reason for departure is consistent with legislative sentencing policies and is not otherwise prohibited.  State v. Bowman, 123 So. 3d 107 (Fla. 1st DCA 2013); State v. Knox, 990 So. 2d 665 (Fla. 5th DCA 2008); State v. Ayers, 901 So. 2d 942 (Fla. 2d DCA 2005).

Rule 3.704 implements the legislatively-created sentencing guidelines, and the statute and the rule each requires a court imposing a downward departure to file, within seven days of the sentencing, either a written order or a copy of the hearing transcript, setting forth the basis for the downward departure.  See § 921.00265(2); Fla. R. Crim. P. 3.704(d)(27)(A).[4]

There is no question that the trial court's written order was untimely rendered. The trial court's order was filed more than one year after the sentence was imposed. In fact, the order was filed after the time permitted under rule 3.800(b)(2) for a party to serve a motion to correct a sentencing error pending appeal ("The motion [to correct a sentencing error]. . . <u>must be served before the party's first brief is served</u>") (emphasis added). Because the motion to correct sentencing error was served untimely, the order rendered thereafter was untimely, and cannot be deemed valid under rule 3.704, rule 3.800(b)(2) or section 921.00265(2).[5] <u>See</u> <u>Miran v. State</u>, 46 So. 3d 186 (Fla. 2d DCA 2010) (holding that trial court acts without jurisdiction when entering an untimely order on 3.800(b)(2) motion, and the untimely order is deemed a nullity and must be stricken).

We are thus left with the oral reason announced by the trial court at the time of sentencing. As counsel for Hodges correctly and commendably conceded on appeal, the oral reason was an insufficient basis to justify a downward departure, as we discuss in greater detail *infra*.

---

[4] Rule 3.704(d)(27)(A) alternatively permits the sentencing judge to list the departure reasons on the Criminal Punishment Code scoresheet.

[5] As discussed *infra*, even if we were to base our decision on the merits of the untimely written order, it failed to set forth any valid basis, supported by competent substantial evidence, to justify the downward departure.

We therefore reverse the judgment and sentence, and remand this cause to the trial court for further proceedings. On remand, under the circumstances of this case, the trial court is not prohibited from again imposing a sentence that departs below the lowest permissible guidelines. Jackson v. State, 64 So. 3d 90 (Fla. 2011). However, the court may do so only if Hodges establishes by a preponderance of the evidence that a valid departure reason exists and is supported by competent substantial evidence.[6] Because our remand permits the trial court, if appropriate, to again consider a downward departure, we briefly address the insufficiency or invalidity of the reasons relied upon by the trial court, in an effort to avoid unnecessary litigation in any future proceedings in this case.

**The "remote" arson conviction**

At the time of sentencing, the trial court orally provided a single reason for the downward departure: that Hodges' "conviction for arson ten years ago" was the "reason why you are scoring what you are scoring." The subsequently-filed written order also indicated that, given the remoteness of this conviction, a guidelines sentence was not justified.

---

[6] If the trial court does not intend to impose a downward departure sentence, or determines there are no valid reasons for a downward departure, the defendant may elect to negotiate a plea with the State, enter an open plea to the court and be sentenced pursuant to the Criminal Punishment Code, or withdraw his previously-entered plea.

The remoteness of the prior conviction is not a valid basis for downward departure, because the question of whether and the extent to which a trial court may consider "remote" prior convictions has already been addressed by the legislature in the Criminal Punishment Code. Specifically, section 921.0021(5) provides a definition for "prior record" and sets forth the parameters under which a remote conviction will not be scored under the Criminal Punishment Code. That definition provides in relevant part as follows:

> "Prior record" means a conviction for a crime committed by the offender, as an adult or a juvenile, prior to the time of the primary offense. . . . <u>Convictions for offenses committed by the offender more than 10 years before the primary offense are not included in the offender's prior record if the offender has not been convicted of any other crime for a period of 10 consecutive years from the most recent date of release from confinement, supervision, or sanction, whichever is later, to the date of the primary offense.</u>

(Emphasis added.)

Hodges' prior arson conviction (as well as the accompanying burglary and criminal mischief convictions) was properly included in his scoresheet because it did not qualify as "remote" under the definition of prior record. The arson offense was committed in 2003; the instant offenses were committed on August 10, 2012, less than ten years later.[7] For this reason alone, the arson could not properly be characterized by the trial court as "remote," as such a characterization would be

_____

[7] Further, the statute measures the ten-year period from the date the defendant is released from serving any sentence for the original offense. Hodges was convicted of the arson offense in May 2003 and sentenced to two years' state prison.

contrary to the legislative sentencing policy as expressed through the provisions of the Criminal Punishment Code.

Further, the statute provides that for a prior conviction to be excluded as remote, the defendant must maintain a conviction-free record for the intervening ten-year period. § 921.0021(5), Fla. Stat. (2012). The record reveals that, in the nine-year interval between the 2003 arson and the 2012 instant offenses, Hodges was convicted in 2006 for possession with intent to sell marijuana and in 2011 for tampering with physical evidence.

Because the Legislature has already determined how a defendant's prior criminal history is to be scored, and under what circumstances a prior record is too remote to be included in a scoresheet calculation, the trial court was not permitted to discount the properly-scored 2003 arson conviction as remote,[8] or base a downward departure on a determination that a properly-scored prior criminal history results in a guidelines sentence that is unduly harsh. Bowman, 123 So. 3d at 109-10; Knox, 990 So. 2d at 669; Ayers, 901 So. 2d at 946; State v. Lerman, 624 So. 2d 849 (Fla. 2d DCA 1993).

---

[8] Indeed, it is clear that the trial court, in extending a plea offer of 366 days, did not simply discount or exclude the points assessed for the prior arson. The record shows that 14 points were assigned for this prior conviction. Even if the prior arson (and the 14 points) were removed from Hodges' scoresheet, the lowest permissible sentence would have been 25.8 months, significantly higher than the 366–day downward departure sentence offered by the trial court.

9

**Sentence manipulation**

The trial court's written order contained an additional basis for downward departure not stated orally at the time of sentencing: that the police engaged in sentence manipulation, citing to Steadman v. State, 827 So. 2d 1022 (Fla. 3d DCA 2002). We conclude this reason was improperly included in the written order and was not supported by competent substantial evidence.

First, the issue of sentence manipulation was never raised at the time of the plea and sentence. Neither defense counsel nor the trial court articulated such a basis for the downward departure. This reason was expressed for the first time in a written order entered more than a year after the sentence was imposed. Such an after-the-fact finding is contrary to the principles established by the contemporaneity requirement of departure sentencing and, as the Florida Supreme Court has acknowledged in disapproving such a procedure, it can create the impression that the trial court is attempting to justify a sentence that may otherwise be subject to challenge. See e.g., Bryant v. State, 39 Fla. L. Weekly S591 (Fla. Oct. 9, 2014); State v. Collins, 985 So. 2d 985, 989 (Fla. 2008).

Second, because this basis was never raised or articulated at the time of sentencing as a basis for departure, the State was not given the opportunity at sentencing to oppose or rebut it. The State was denied notice and an opportunity to be heard at the sentencing on this purported basis for downward departure.[9]

10

Finally, there was no competent, substantial evidence presented at the sentencing hearing to support the trial court's conclusion that the police officers engaged in sentence manipulation. The fact of the instant case appears to be a far cry from those presented in Steadman, 827 So. 2d at 1023-24. The defendant in Steadman was charged in six separate informations with six sales of cocaine to a single undercover police officer, taking place on six separate dates over a period of five weeks. All of the sales took place within 1000 feet of a middle school. The first transaction took place on March 7, but the officers did not arrest Steadman at that time. Instead the same officer made subsequent purchases from Steadman on March 9, March 12, March 23, April 6 and April 12, before arresting him. The officer supervising the operation candidly acknowledged that they "decided to forego any arrest of Steadman until the police had made multiple purchases, in order to generate enough quantity of cocaine to command a lengthy prison sentence for Steadman." Steadman, 827 So. 2d at 1024. In a case of first impression, this Court held that sentence manipulation may serve as a valid basis

[9] Although the defense asserted, at oral argument, that the trial court held a rule 3.800 hearing (following the filing of the notice of appeal and the State's service of its initial brief) at which the State was given an opportunity to argue the issue of sentence manipulation, we do not have, on the record before us, any transcript of such a hearing. Moreover, such a hearing (and the order subsequently issued) was untimely under rule 3.800(b)(2), given that the State had already filed its initial brief on appeal. Further, an opportunity to make argument falls far short of proper notice and an opportunity to present evidence to rebut the requisite evidentiary showing by the defendant.

11

for a downward departure, but provided guidelines for making such a fact-intensive determination:

> When considering sentence manipulation as a basis for downward departure the trial court's inquiry should focus on law enforcement intent: was the sting operation continued only to enhance the defendant's sentence or did legitimate law enforcement reason exist to support the police conduct, such as to determine the extent of the criminal enterprise, to establish the defendant's guilt beyond a reasonable doubt, or to uncover any co-conspirators? If legitimate law enforcement concerns exist, then a downward departure based on sentence manipulation is not warranted.

Id. at 1025.

In the instant case, by contrast, the officers observed Hodges engage in three hand-to-hand transactions over a period of approximately thirty minutes on a single day. Hodges made each sale to a private individual, not an undercover officer or confidential informant. Each of the three purchasers was arrested by take-down officers immediately after leaving the scene of the transaction. No testimony or other evidence was presented at sentencing that the officers could have immediately arrested Hodges following the first sale; that the officers intentionally refrained from arresting him for the purpose of increasing the number of counts and sentencing exposure; or that there were no legitimate law enforcement reasons for not arresting Hodges immediately after the first sale. We are left merely to speculate what reasons may have existed for the officers' actions, because at the sentencing the trial court did not articulate this as a basis for departure, and the

12

State had no evidentiary opportunity to contest or rebut this determination. Moreover, the burden of establishing the necessary facts to support a downward departure is on the defendant. No evidence was presented at the sentencing to sustain the burden for a downward departure based upon Steadman.[10]

Reversed and remanded for proceedings consistent with this opinion.

---

[10] We reject Hodges' suggestion that the arrest form (which was a part of the court file) could serve as a basis to support the downward departure. To the extent that the arrest form is relevant, it appears to undermine, rather than support Hodges' position that the police intended to manipulate his charges or sentences. Hodges engaged in three separate transactions with three individuals (sale of cocaine to the first individual; sale of cocaine and marijuana to the second individual; and sale of cocaine and marijuana to the third individual). However, the arrest form charged only a single count of sale of cocaine and a single count of sale of marijuana. This would appear to belie any assertion that law enforcement intended to manipulate or increase Hodges' charges or sentence. Although the State Attorney's Office ultimately charged Hodges with three sales of cocaine and two sale of marijuana, Steadman holds that the relevant inquiry focuses on the intent of law enforcement at the time of the events leading to the arrest. Steadman 827 So. 2d at 1025.