NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                          )
                                           )
      Appellant,                    )
                                           )
v.                                         )    Case No. 2D16-1819
                                           )
HENRY JOHNSON, JR.,                        )
                                           )
      Appellee.                     )
                                           )
_____)

Opinion filed August 16, 2017.

Appeal from the Circuit Court for
Manatee County; Deno Economou, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Chelsea S. Alper,
Assistant Attorney General, Tampa,
for Appellant.

Howard L. Dimmig, II, Public Defender,
and Kevin Briggs, Assistant Public
Defender, Bartow, for Appellee.


CRENSHAW, Judge.

         After a jury found Henry Johnson, Jr., guilty of four counts of sale of

cocaine and two counts of sale of cannabis in violation of sections 893.13(1)(a)(1), and

(1)(a)(2), Florida Statutes (2014), the trial court imposed concurrent downward

departure sentences of ten months' jail on each count.  Citing State v. Steadman, 827

So. 2d 1022 (Fla. 3d DCA 2002), the court based the departure on its finding that law enforcement officers engaged in sentence manipulation by making multiple purchases over the course of their sting operation for no reason other than to increase Johnson's potential sentence.  The State now appeals the sentences arguing that the basis for the departure is not supported by competent substantial evidence and, even assuming there was sufficient evidence that law enforcement engaged in sentence manipulation, Johnson's sentences are still improper under <u>Steadman</u> because they are below what his guideline sentence would have been if he had been arrested after the first sale.  Because the trial court erred in departing below the confines of <u>Steadman</u>, we reverse.

The charges in this case arose after a confidential informant provided law enforcement officers with Johnson's phone number and indicated that Johnson was selling crack cocaine.  Using this information, the lead officer made contact with Johnson and purchased $60 worth of cocaine on January 23, 2015, in the parking lot of a large hardware store.  On January 27, the officer again contacted Johnson and purchased $60 worth of cocaine and $40 worth of cannabis at the same location.  The following day, the officer purchased another $60 worth of cocaine and $20 worth of cannabis from Johnson at the same location.  Finally, on February 3, in the same hardware store parking lot, the officer purchased $60 worth of cocaine.  The officer obtained audio and video recordings of each of the transactions.  Other officers also observed all of these transactions.  For all but the last of these transactions, Johnson did not initially possess the drugs and, instead, obtained the drugs from other individuals who would drive to the parking lot and hand the drugs to Johnson during the

transactions. Officers eventually arrested Johnson for these transactions pursuant to an arrest warrant. Following a jury trial, Johnson was convicted as charged.

At the outset, we note that the State's argument that the departure was not based on competent substantial evidence is not preserved. See State v. Wiley, 210 So. 3d 658, 659 (Fla. 2017) (discussing the components of proper preservation). During sentencing, the State specifically relied on Steadman to argue that the trial court could not depart below Johnson's lowest permissible sentence when calculated with a scoresheet that only included the first charge. See Steadman, 827 So. 2d at 1024 ("An important consideration in our decision is the fact that the judge imposed a sentence harsher than the guideline sentence had Steadman been arrested after the first sale."). In support of its argument, the State presented two scoresheets. Under his actual scoresheet, which included all of the instant convictions, Johnson's lowest permissible sentence was 46.95 months' prison. The other scoresheet included only the first charge for which Johnson was convicted and indicated a lowest permissible sentence of 31.2 months' prison. The State asserted that "if the basis for departure here to go below the 31.2 months is Steadman, the State raises the objection that Steadman doesn't hold for that." Thus, the State did not preserve the argument that the departure was not based on competent substantial evidence.

Even assuming the State's argument was preserved, we conclude that the departure basis was supported by competent substantial evidence. "Appellate courts apply a mixed standard of review when analyzing a downward departure sentence. First, the appellate court must determine whether the trial court applied the correct rule of law, and whether competent, substantial evidence supports the trial court's reason for

imposing a downward departure sentence." State v. Simmons, 80 So. 3d 1089, 1092 (Fla. 4th DCA 2012). The court "must then decide whether the trial court [abused its discretion] in determining that the downward departure sentence was the best sentencing option for the defendant by weighing the totality of the circumstances in the case." Id. "[T]he trial court can impose a downward departure sentence for reasons not delineated in section 921.0026(2)[, Florida Statutes (2008)], so long as the reason given is supported by competent, substantial evidence and is not otherwise prohibited." Id. (citing State v. Stephenson, 973 So. 2d 1259, 1263 (Fla. 5th DCA 2008)).

In Florida, the concept of sentence manipulation as a non-statutory basis upon which to depart downward was first addressed in Steadman, 827 So. 2d at 1024. See also Dodier v. State, 125 So. 3d 355, 356 (Fla. 5th DCA 2013) (suggesting that counsel's failure to argue that Steadman applies at sentencing might also provide a basis for postconviction relief). Explaining that the legislature's purpose in enacting sentencing guidelines "is undermined when law enforcement is allowed discretion to determine what a criminal's sentence will be," the court held that "a trial court has discretion to impose a downward departure sentence[] when law enforcement allows a defendant to continue criminal activities for no reason other than to enhance his or her sentence." Steadman, 827 So. 2d at 1025. After surveying the various standards utilized by federal and other state courts in applying the doctrine of sentence manipulation, the Steadman court concluded that because a showing of "outrageous conduct" on the part of law enforcement officers would constitute entrapment—a complete defense to the charge—a lower standard should be employed as "[t]he trial court can mitigate a sentence based on conduct that is not sufficient to excuse the

- 4 -

crime." Id. (quoting Hines v. State, 817 So. 2d 964, 965 (Fla. 2d DCA 2002)).  The court

articulated its standard as follows:

> When considering sentence manipulation as a basis for downward departure, the trial court's inquiry should focus on law enforcement intent: was the sting operation continued only to enhance the defendant's sentence or did legitimate law enforcement reasons exist to support the police conduct, such as to determine the extent of the criminal enterprise, to establish the defendant's guilt beyond a reasonable doubt, or to uncover any co-conspirators?  If legitimate law enforcement concerns exist, then a downward departure based on sentence manipulation is not warranted.

Id.

The State does not argue that the Steadman standard is erroneous or that

sentence manipulation is not a valid reason upon which to depart downward.  Instead,

the State argues that the departure was not based on competent substantial evidence

here because law enforcement had legitimate reasons for continuing to make

purchases from Johnson.  The State also argues the evidence was insufficient because

the supervising officer in Steadman testified that the sole purpose of making multiple

purchases in that case was to increase Steadman's sentence, 827 So. 2d at 1024,

whereas here, there was no similar testimony.  We cannot agree.

First, contrary to the State's suggestion, the Steadman court did not limit

its holding to scenarios where law enforcement officers candidly confess their intent to

engage in sentence manipulation.  To be sure, imposing such a standard would nearly

eviscerate the doctrine and incentivize officers to develop pretextual excuses for

behavior that would otherwise constitute sentence manipulation.

More importantly, the trial court found that law enforcement officers did not

have legitimate reasons for continuing to purchase drugs from Johnson, and its finding

- 5 -

is supported by competent substantial evidence. The officer in charge of the operation testified that the legitimate reasons for the repeated transactions were primarily to obtain good audio and video recordings of Johnson's criminal conduct, in order to make a strong case against Johnson, and to gain information on other mid-level drug dealers. However, through cross-examination of the officer, Johnson showed that these reasons were not legitimate because the officer was not actually pursuing these goals during the investigation.

As for the first goal, the lead officer testified that he obtained good audio and video recordings of each of the transactions. At trial, the State admitted into evidence all of these videos along with still frames clearly showing Johnson engaging in the transactions. Because law enforcement already had the necessary audio and video for a strong case after the first transaction, that goal could not serve as a legitimate basis to continue the transactions with Johnson.

Regarding the desire to meet mid-level dealers, the trial court found that the officers had the opportunity to investigate no fewer than six different individuals who brought the drugs to Johnson during the transactions but they made no effort to do so. The lead officer testified that during the transactions Johnson would "call somebody, and one of his dealers would show up with whatever drug we were ordering." In fact, during the second and third transactions, when the officer bought both cocaine and cannabis from Johnson, two different dealers—one for each drug—showed up after Johnson called. Additionally, Johnson was almost always accompanied by someone different at each transaction because Johnson was driven to each transaction except for the final one. Despite the presence of all of these additional people and vehicles

involved in the transactions, the officers concerned themselves exclusively with Johnson save for one effort made during the first transaction where they obtained the license plate of the car in which Johnson arrived. Although they ran that plate and discovered the identity of the individual driving Johnson, the officers took no further investigatory action as to that individual. The lead officer testified that there were always other members of his team observing, and that he had the ability to record these other potential suspects, yet he decided not to investigate the individuals who showed up at the transactions because he felt it would not lead anywhere. The officer also admitted that although Johnson mentioned a dealer by name during one of the transactions, the officer made no attempt to develop that dealer as a suspect. Tellingly, the lead officer testified that he realized things were "not panning out" before the final transaction but decided to go along with that transaction regardless. These facts belie the officer's testimony that the legitimate reason for continuing the transactions was to identify mid-level dealers.

Although the trial court observed that there was no testimony that the officers deliberately engaged in sentence manipulation, it determined that because legitimate law enforcement concerns did not exist, the downward departure was warranted as "the purpose obviously was to conduct these sales with this defendant, not pursue anyone else." The trial court emphasized the officer's failure to investigate any of the other suspects, and the fact that the officer admitted that he knew Johnson was simply an addict and not a mid-level dealer.

With the exception of the testimony directly revealing the officers' intent, the facts of this case are similar to Steadman, which involved six transactions on six

different dates; transactions principally initiated by, and made exclusively to, undercover officers; transactions all for similar prices, substances, and quantities; and transactions all at the same location. 827 So. 2d at 1023-24. In comparison, this case differed only in that it involved six transactions over the course of four different dates and involved transactions for both cocaine and cannabis on two of the dates following the first transaction, but the prices and quantities generally remained the same. Compare Steadman, 827 So. 2d at 1023-24, with State v. Robinson, 149 So. 3d 1199, 1204 (Fla. 1st DCA 2014) (finding no evidence of sentence manipulation where there was only one drug sale), State v. Hodges, 151 So. 3d 531, 536 (Fla. 3d DCA 2014) (finding no competent substantial evidence supporting sentence manipulation where officers observed defendant engage in three hand-to-hand transactions over a period of thirty minutes, the defendant sold to private individuals, each of the purchasers was immediately arrested by officers, and there was no evidence that there were no legitimate reasons for not arresting the defendant after the first sale), United States v. Torres, 563 F.3d 731, 733-36 (8th Cir. 2009) (affirming the denial of a sentence manipulation departure where police engaged in six transactions over six weeks because (1) police could not and did not obtain video surveillance of the transactions, (2) they needed to gain the defendant's trust, and (3) they explained that the goal of the investigation was to identify coconspirators, the drug source, and to investigate defendant's ability to sell larger amounts of drugs; the court specifically rejected the argument that the officers' failure to succeed in identifying coconspirators or the supplier evidenced sentence manipulation because the officers did succeed in ascertaining the quantities defendant was willing and able to deal), and United States v. Shephard, 4

- 8 -

F.3d 647, 649 (8th Cir. 1993) (explaining that sentence manipulation was not present where the government's repeated transactions were material to breaking up another drug ring in the city and the government presented evidence of other drug dealings by the defendant). Thus, the trial court's reason for imposing the downward departure was supported by competent substantial evidence.

Although we conclude that the departure basis was supported by competent substantial evidence, we must also conclude that the trial court erred in sentencing Johnson to anything below 31.2 months—what his lowest permissible sentence would have been if only the first of the instant charges had been scored. See Steadman, 827 So. 2d at 1025-26 ("We emphasize that our holding is predicated on the fact that the sentence imposed did not go below what Steadman would have received in the absence of the sentence manipulation."); see also Robinson, 149 So. 3d at 1204 (noting that the sentence manipulation downward departure was inappropriate because "the county jail sentence imposed by the trial court in this case was well below the 39.75 month prison sentence that Robinson would have been subject to if he had only been charged with count 1"). On remand the trial court may once again impose departure sentences based upon its finding of sentence manipulation under Steadman. However, the trial court may not depart below what Johnson would have received in the absence of the sentence manipulation.

Accordingly, we reverse Johnson's sentences and remand for resentencing within the range provided by Steadman.

Reversed and remanded for resentencing.

LaROSE, C.J., and ROTHSTEIN-YOUAKIM, J., Concur.