# Third District Court of Appeal
## State of Florida

Opinion filed February 9, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D20-1220 & 3D20-1302
Lower Tribunal No. F19-13935

_____

**The State of Florida,**
Appellant/Appellee,

vs.

**Duane Lamar Jones,**
Appellee/Appellant.

Appeals from the Circuit Court for Miami-Dade County, Marisa Tinkler Mendez, Judge.

Ashley Moody, Attorney General, and David Llanes, Assistant Attorney General, for appellant/appellee.

Carlos J. Martinez, Public Defender, and James A. Odell, Assistant Public Defender, for appellee/appellant.

Before EMAS, SCALES and GORDO, JJ.

EMAS, J.

**INTRODUCTION**

The State appeals a downward departure sentence imposed by the trial court following defendant's trial and conviction on the charges of burglary of an occupied dwelling and violation of a domestic violence injunction. The defendant cross-appeals, contending the trial court erred in denying his motion for judgment of acquittal as to the burglary charge.

We affirm without discussion the defendant's cross-appeal and, for the reasons that follow, we reverse the trial court's downward departure sentence.

**FACTS AND BACKGROUND**

The defendant was convicted in February 2020 following a trial, and was originally scheduled to be sentenced on March 11, 2020. Under the Criminal Punishment Code Scoresheet, Florida Rule of Criminal Procedure 3.992, the lowest permissible sentence for defendant was twenty-one months' state prison (and a statutory maximum of fifteen years' state prison).

However, after a delay in the sentencing date, and the onset of COVID-19, the defendant sought a downward departure of two years' community control followed by three years' probation, on the basis that "Mr. Jones should not be sentenced to incarceration in order to prevent the spread of COVID-19" and that "incarcerating Mr. Jones would endanger the health of

corrections staff inmates, and Mr. Jones." Defendant cited to statistics of the World Health Organization regarding the global pandemic, as well as statistics for the State of Florida showing that (at the time of the sentencing) over 31,000 Floridians had tested positive for the virus, over 1000 in Florida had died of COVID, and there were 11,000 confirmed cases and 300 deaths in Miami-Dade County.

Defendant further contended that because COVID-19 was "rampant in the jail" and because jails across the country had become hotspots for the spread of COVID-19, jail inmates were at greater risk to contract the virus. Defendant also noted that there was in place a federal order directing that the corrections officials provide adequate social distancing in Miami-Dade's local jails and provide evidence of the list of measures being taken to protect vulnerable inmates who are over sixty years old or who have underlying health conditions.

Defendant was fifty years old at the time of sentencing, and the only medical evidence—specific to defendant—presented in support of his request for a downward departure sentence was the testimony of defendant's father that his son suffered from high blood pressure. No medical testimony, documentation or other evidence was introduced in support of this claim, and the defendant himself did not testify.

The trial court inquired if there was any other basis relied upon by defendant to support his request for a downward departure sentence.[1] Defense counsel responded:

> No, nothing further. The bulk of our argument lies with the fact that there is a global pandemic, and putting him in an incarcerative setting would only further the spread of that virus. Not only put himself in danger, but all the other people in danger as well, at a time when there have been significant efforts to try to limit the capacity of people in incarcerative settings.

The State countered that the existence of a pandemic (and the potential for increased transmissibility within the confines of a jail or prison setting) was by itself legally inadequate to support a downward departure. The State suggested, as an alternative, deferring defendant's surrender to a date when the spread of COVID-19 did not present a heightened risk of transmission. The State also contended that the father's testimony about his son's high blood pressure was not competent substantial evidence to support a downward departure sentence.

Although the trial court did note the testimony of defendant's father, the trial court did not rely upon it as a basis for its downward departure

---

[1] The trial court expressly rejected the other two bases asserted by defendant in support of his motion for downward departure: that defendant lacked the capacity to understand the burglary statute, and the legislative intent of the burglary statute.  These are not at issue here.

sentence, noting that the defendant's age (less than sixty years old) did not place him in a high risk category according the Centers for Disease Control and Prevention and, more importantly, concluding: "What Defense did not present to the Court, other than a verbal statement, I did not receive any medical records or any evidence, again, other than the testimony of Mr. Jones' father, that Mr. Jones is in a high risk category of individuals that might be more susceptible to contracting the virus."

Nevertheless, the trial court imposed a downward departure sentence of two years' community control followed by eight years' probation, articulating the following basis:

> So I wonder whether or not, because Mr. Jones has been under supervision of the Court over the past year, whether or not Mr. Jones—what would be an appropriate punishment for Mr. Jones... given the extent of illness that has permeated the jails and prison, what benefit it would serve to essentially punish Mr. Jones in that fashion....

> So for the following reasons, the Court is going to find that, given all of the circumstances presented, the fact that the Covid virus is so rampant, and continues to be so rampant in the county jail and in the prison, that I find that those circumstances do justify my departing downward from the sentencing guidelines.

## ANALYSIS AND DISCUSSION

Section 921.0026, Florida Statutes (2013), entitled "Mitigating Circumstances," is part of Florida's Criminal Punishment Code. It establishes guidelines for imposing downward departure sentences, and

5

provides a non-exhaustive list of circumstances under which a downward departure may lawfully be imposed.  This section provides in pertinent part:

> A downward departure from the lowest permissible sentence, as calculated according to the total sentence points pursuant to s. 921.0024, is prohibited unless there are circumstances or factors that reasonably justify the downward departure. Mitigating factors to be considered include, but are not limited to, those listed in subsection (2). The imposition of a sentence below the lowest permissible sentence is subject to appellate review under chapter 924, but the extent of downward departure is not subject to appellate review.

§ 921.0026(1), Fla. Stat. (2013).

Because the statutory list of mitigating circumstances is not exclusive, Florida courts have held that a basis for downward departure will be upheld if there is competent substantial evidence to support the stated basis, so long as the purported basis for departure is consistent with legislative sentencing policies and is not otherwise prohibited.  State v. Hodges, 151 So. 3d 531 (Fla. 3d DCA 2014); State v. Bowman, 123 So. 3d 107 (Fla. 1st DCA 2013).

Our Supreme Court has described the proper analysis to be engaged in by a trial court considering a downward departure, and an appellate court's corresponding scope and standard of review of the trial court's decision:

> A trial court's decision whether to depart from the guidelines is a two-part process. First, the court must determine whether it *can* depart, i.e., whether there is a valid legal ground and adequate factual support for that ground in the case pending before it (step 1). . . . This aspect of the court's decision to depart is a mixed question of law and fact and will be sustained on review if the

6

court applied the right rule of law and if competent substantial evidence supports its ruling.

Second, where the step 1 requirements are met, the trial court further must determine whether it *should* depart, i.e., whether departure is indeed the best sentencing option for the defendant in the pending case. In making this determination (step 2), the court must weigh the totality of the circumstances in the case, including aggravating and mitigating factors. This second aspect of the decision to depart is a judgment call within the sound discretion of the court and will be sustained on review absent an abuse of discretion.

Banks v. State, 732 So. 2d 1065 (Fla. 1999).

The question presented is whether the articulated basis for the downward departure is legally valid, is consistent with legislative sentencing policies, and is supported by competent substantial evidence. See Hodges, 151 So. 3d at 534 (holding: "While a trial court may depart for a reason other than those set forth in section 921.0026(2), it may only do so if the articulated reason for departure is consistent with legislative sentencing policies and is not otherwise prohibited"); State v. Cosby, 313 So. 3d 903, 905 (Fla. 2d DCA 2021) (noting that the reason for a departure sentence must be supported by competent, substantial evidence, and must be consistent with legislative sentencing policies and not otherwise prohibited); Bowman, 123 So. 3d at 109 (same).

In State v. Saunders, 322 So. 3d 763, 767 (Fla. 2d DCA 2021), our sister court considered whether the trial court properly imposed a downward

7

departure sentence where the defendant asserted, as a basis, the overcrowding of prisons in the midst of the COVID-19 pandemic. The trial court, over State objection, imposed a departure sentence on that basis, noting that despite the lack of evidence regarding the health and vulnerability of the defendant: "I still think that we have to make every possible attempt to get people out of the system, and my understanding is the jail is now facing another overcrowding problem." Id.

The State appealed the sentence, and the Second District reversed, holding the downward departure was improper for two reasons. First, the trial court's generalized concerns about jail or prison overcrowding could not serve as a valid basis because it is inconsistent with legislative sentencing policy "and no case law supports the court's finding." Id. at 766-67. See also State v. Caride, 473 So. 2d 1362, 1363 (Fla. 3d DCA 1985) ("[T]hat the prison system is already overcrowded, is not a valid justification for a departure from the guidelines recommended range. This observation, even if accurate, concerns a matter properly addressed by the legislative and executive branches").

Second, the court held that Saunders failed to present competent substantial evidence in support of his request for a departure sentence, adding, "although the court inquired about whether Saunders had previously

8

been released due to the pandemic, it is not clear whether the court based its decision to impose downward departure sentences on the pandemic or the more general [overcrowding] reasons articulated." Saunders, 322 So. 3d at 767.

Under either reasoning, the Saunders court found the evidence inadequate:

> [T]here was no evidence—much less competent substantial evidence sufficient to establish a preponderance—supporting the court's statements. There was no evidence of jail overcrowding. While we applaud the trial court's appreciation for the seriousness of the pandemic, there was no evidence regarding the pandemic, the courts' response to the pandemic, or Saunders' health or vulnerability in relation to Covid-19.

Id.

We agree with our sister court's analysis in Saunders. Applying it to the instant case, the trial court's first articulated basis for departure—that "Mr. Jones has been under supervision of the Court over the past year" is not a valid basis for departure and is inconsistent with legislative sentencing policy.[2] The second articulated basis for departure—"that the Covid virus is

---

[2] Following his arrest, defendant was released on pretrial house arrest while awaiting his trial. Following his conviction, the trial court permitted him to remain on house arrest pending his sentencing. It is this combined period of pretrial and presentencing house arrest status the trial court referred to when noting that "Mr. Jones has been under supervision of the Court over the past year." It appears undisputed that defendant did not violate his conditions of house arrest. However, to permit a trial court to rely upon this as a basis for

9

so rampant, and continues to be so rampant in the county jail and in the prison" likewise cannot serve as a valid basis for departure, at least in the absence of competent substantial evidence that this defendant has an underlying medical or health condition which places him at increased risk of contracting COVID-19 if incarcerated in a county jail or state prison. There was no such showing in the instant case; indeed, the trial court rejected—as insufficiently established—the one medical condition (high blood pressure) offered by defendant as a basis for his ostensible increased risk or vulnerability to COVID-19.

## CONCLUSION

We hold that the trial court's basis for a downward departure sentence was inconsistent with legislative sentencing policy and was not supported by competent substantial evidence related to the defendant's individual health

---

a downward departure sentence would, in effect, serve as an end-run around existing statutory law and case law holding that a defendant is not entitled to receive credit, against his incarcerative sentence, for time spent on house arrest. See § 921.161(1), Fla. Stat. (2020) (providing in relevant part: "A sentence of imprisonment shall not begin to run before the date it is imposed, but the court imposing a sentence shall allow a defendant credit for all of the time she or he spent in the county jail before sentence."); Fernandez v. State, 627 So. 2d 1 (Fla. 3d DCA 1993) (holding defendant was not entitled, under section 921.161(1), to credit against the incarcerative portion of his sentence for the time he served on house arrest). See also Licata v. State, 788 So. 2d 1063 (Fla. 4th DCA 2001) (same); Myers v. State, 761 So. 2d 485 (Fla. 5th DCA 2000) (same).

10

or medical condition and any corresponding increased risk or vulnerability to COVID-19.  We therefore reverse the sentence and remand for a de novo resentencing hearing.

Reversed and remanded.